Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, with minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 MOTION TO ADD PARTIES
1. The caption on previous documents related to this claim have inappropriately identified the deceased employee, Richard Wall, as the plaintiff in this action. The Commission on its own motion has added the appropriate parties in this action.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A set of records indexed in a black notebook was marked as stipulated exhibit 1 and received into evidence.
 *********** RULINGS ON EVIDENTIARY MATTERS
1. Counsel for the defendant objected to the admission of an affidavit by lay witness, Spurgeon Wood, marked as court's exhibit 1 as well as two documents marked as court's exhibit 1A and court's exhibit 1B on the grounds that these documents were irrelevant and immaterial. The objections by counsel for the defendant were OVERRULED.
2. On February 19, 1996, counsel for the plaintiff moved that additional evidence be received in this matter. This motion was DENIED.
 ***********
Based upon all of the competent evidence in the record, the Full Commission modifies and adopts the Findings of Fact by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On October 26, 1994, the decedent began driving a taxicab for Willard's Cab Company whose business was the operation of taxicabs. Willard's Cab Company was authorized to operate taxicabs within the city limits of Winston-Salem pursuant to a franchise granted by the Winston-Salem Board of Aldermen.
2. On October 26, 1994, decedent entered into a contractual agreement with the defendant to drive one of their cabs, thus entering into work which was an essential part of that company's business. In this agreement, decedent acknowledged that he was not covered by Workers' Compensation Insurance provided by the defendant and he expressly waived such coverage. As a result of this agreement, defendant agreed to make available to the deceased a taxicab to operate on a per-shift lease basis.
3. Defendant by and through its agents trained decedent to operate the radios and meters in the cabs.
4. Decedent was prohibited from being able to hire someone else to operate a cab that the defendant leased to the decedent.
5. Decedent was prohibited from being able to carry or possess a handgun or other firearm when driving a taxicab leased from the defendant.
6. Defendant maintained control over every driver's permission to possess a firearm because defendant was concerned that a firearm in the possession of the driver would deter customers from seeking transportation from the driver.
7. Defendant knew that many of the customers who sought taxicab service through Willard's Cab Company were dangerous.
8. Decedent was prohibited from utilizing a firearm as a method of maintaining his own personal safety in the performance of providing taxicab services to dangerous persons at night.
9. On November 1, 1994, defendant had the authority to establish shifts for the drivers who leased vehicles from the defendant-employer. Both the owner of Willard's Cab Company, Coy Willard, and office manager Robin Willard expressly denied that drivers were ever required to report at specified times. Robin and Coy Willard's testimony is not accepted as credible on this issue. On November 1, 1994, the defendant by and through its agents had in effect a schedule requiring drivers to check in at specified times. These times were as follows: six drivers were to check in at 5:00 a.m. or 5:00 p.m., six drivers were to check in at 6:00 a.m. or 6:00 p.m. and two drivers were to check in at 12:00 noon or 12:00 midnight. The defendant had a policy that any driver who failed to report to work as scheduled would forfeit whichever vehicle that they might have selected to lease for that shift. This schedule was implemented for the purpose of insuring that the fleet was constantly and completely utilized. Taxicabs were made available to drivers each shift for their "leasing" for that shift on a "first come, first choice" basis.
10. Decedent was required to charge fares set by the city tariff schedule and to turn in to the defendant at the end of each shift all trip tickets for that shift.
11. Decedent could not lawfully operate a taxi in the city except under the franchise granted to the company by the Winston-Salem Board of Aldermen which required that all of the defendant's cabs be painted a single identifiable color.
12. Decedent was required to maintain records detailing fares and tips collected pursuant to Section 23-41 of the City of Winston-Salem Ordinance No. 3686 which the defendant required be turned in to it at the conclusion of each shift.
13. Decedent operated a taxicab that was painted and identified in a distinctive manner pursuant to the City of Winston-Salem Ordinance No. 3686 and the defendant's own requirements.
14. Defendant was responsible for the maintenance of the vehicles operated by the decedent.
15. Decedent was entitled to keep all of the fares and tips he received during the time period that he "leased" vehicles from the defendant.
16. Decedent was not restricted as to the area in which he operated vehicles that he "leased" from defendant.
17. Decedent was not required to remain at any specified place during the time periods that he "leased" a vehicle from the defendant.
18. Decedent was responsible for paying for the fuel used to run the taxicabs decedent operated.
19. Defendant did not withhold income taxes or Social Security taxes from the decedent Richard Wall.
20. Defendant "leased" the vehicle "car 57" to the decedent on November 1, 1994; although on other occasions, the decedent drove other cabs.
21. On November 1, 1994, the decedent, Richard Byron Wall operated a cab owned by Herman Mazzeo. Herman Mazzeo had "leased" his vehicle which he drove himself at least one shift each day to the defendant on a per-shift basis.
22. Decedent paid the defendant to "lease" the vehicle he was operating on November 1, 1994. Defendant was not paid by decedent or other drivers in advance for the use of the vehicles that the defendant contracted to provide to the decedent or other drivers. Defendant received fifty-five dollars ($55.00) at the end of each time period (usually a shift) that decedent had operated a taxicab up to November 1, 1994.
23. Decedent was shot in the back of the head at approximately 1:35 a.m. on November, 1, 1994.
24. On November 1, 1994, decedent was found outside of a taxicab just off Highway 52 in a prone position bleeding around the head and neck.
25. Decedent was shot by an assailant while operating the taxicab. Decedent was shot in the back of the head while inside his vehicle.
26. The killing of the decedent was an unlooked for and untoward event, and a result produced by a fortuitous occurrence.
27. As a result of the defendant's policy prohibiting possession of a firearm by a driver during the operation of the taxicab, decedent did not have a firearm visible in his taxicab. The presence of a firearm might have deterred the assailant from entering decedent's taxicab.
28. On November 1, 1994, Robin Willard and her brother had an employer-employee relationship with the defendant.
29. Decedent received fare money in the amount of $537.00 during the forty-four hours that he had worked prior to his death. Decedent paid a fee of $220.00 to the defendant during that four-day period. This fee was for both dispatching services and for the "lease" of the taxicab.
30. At the time of decedent's death, decedent's average weekly wage was $317.00.
31. Richard Dean Fulcher, nine year-old son of the decedent, was the sole dependent of the decedent at the time of his death.
32. On or about November 1, 1994, defendant conducted a taxi business which was intended to operate in a manner which would maximize the number of fares generated and serviced.
33. Plaintiff's attorney moved to have Barbara Wall appointed as the Guardian ad Litem for the minor Richard Dean Fulcher. Inquiry was made into the fitness of Barbara Wall, and it was determined that she was of sound mind and intention and thus qualified to act as Guardian ad Litem for the minor, Richard Dean Fulcher.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Based on the greater weight of the evidence, there was an employer-employee relationship between the decedent and the defendant on November 1, 1994. The test that is required to be employed in North Carolina to determine decedent's employment status turns on the amount of control exercised over the decedent. This test is set forth in Little v. Poole,11 N.C. App. 597, at 601, 182 S.E.2d 206, at 209 (1971) as follows:
 The test for determining whether a relationship between parties is that of employer and employee, or that of employer and independent contractor, is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing work, as distinguished from the right merely to require certain definite results conforming to the contract.
The decedent was able to "lease" a taxicab from the defendant each shift on a "first come, first served" basis. Defendant set the time when the plaintiff could "lease" a taxicab by establishing shifts for the drivers who "leased" vehicles. The decedent was not free to decide when he would perform his job. The decedent operated the taxicab under defendant's franchise authority granted to the defendant by the City of Winston-Salem and could not have otherwise operated a taxicab without such authority. Defendant would not allow decedent to hire assistants to operate any taxicab that he might "lease". Whichever cab he drove was required to be the color designated by the defendant. He was required to turn in to the defendant all his trip tickets at the conclusion of each shift. Defendant would not allow decedent to possess or utilize a firearm on the job. This case is factually distinguishable from Alford v. Victory CabCo., 30 N.C. App. 657, 228 S.E.2d 43 (1976). InAlford, a dispatcher for the cab company shot the plaintiff in the mistaken belief that Alford had not paid money owed to the company. There, drivers for the company rented taxicabs for $15.00 for a twenty-four hour period. Drivers were allowed to keep all of the fares they collected, and they were allowed to use the cab for their own purposes during the period of time in which they had the vehicle. Based on these facts, the Court of Appeals upheld the decision of the Industrial Commission denying the plaintiff workers' compensation benefits. The company in Alford had no supervisory control over the manner or method in which the driver chose to operate the cab; did not schedule the drivers; and apparently did not restrict the carrying of fire arms.
No contract or agreement, written or implied, . . . or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by N.C. Gen. Stat. Chapter 97, Article 1, except as therein otherwise expressly provided. N.C. Gen. Stat. § 97-6.
2. On November 1, 1994, the decedent and the defendant were subject to and bound by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-3.
3. On November 1, 1994, decedent sustained an injury by accident arising out of and in the course of his employment when he was shot and killed while operating the taxicab provided to him by the defendant. N.C. Gen. Stat. § 97-38.
4. As a result of the death of the decedent, the dependents of the decedent are entitled to benefits pursuant to N.C. Gen. Stat. § 97-38.
5. Decedent's dependent child, Richard Dean Fulcher, is conclusively presumed to be a dependent of the decedent. N.C. Gen. Stat. § 97-39.
6. Decedent's dependent child, Richard Dean Fulcher, is entitled to the entire compensation owed to the estate of the decedent at a compensation rate of $211.43. N.C. Gen. Stat. §97-38.
7. Decedent's dependent child, Richard Dean Fulcher, is entitled to collect the entire compensation benefits payable to the estate of the decedent until he reaches the age of eighteen beginning November 1, 1994. N.C. Gen. Stat. § 97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay to Barbara Wall, the mother and natural guardian for Richard Dean Fulcher, compensation at the rate of $211.43 per week for the period beginning November 1, 1994 and until said minor reaches eighteen years of age. This AWARD is subject to the attorney fee approved below. This AWARD shall be paid solely for the benefit of minor, Richard Dean Fulcher. Such compensation as has accrued shall be paid in a lump sum, without commutation and subject to the attorney fee approved below.
2. An attorney fee in the amount of twenty-five percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel. The accrued portion of the fee shall be deducted from the accrued benefits and paid directly to counsel for the plaintiff. Thereafter, defendants shall forward every fourth check of compensation benefits to plaintiff's counsel until the minor child, Richard Dean Fulcher reaches the age of eighteen.
3. Defendant shall pay the costs.
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ COY M. VANCE COMMISSIONER
S/______________________ LAURA K. MAVRETIC COMMISSIONER