JOHNNY ALFORD, EMPLOYEE-PLAINTIFF, APPELLANT v. VICTORY CAB COMPANY, INC., EMPLOYER-DEFENDANT & AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER-DEFENDANT, APPELLEES

No. 7626IC345

(Filed 15 September 1976)

Master and Servant § 50— workmen's compensation — taxicab driver — independent contractor

A taxicab driver was an independent contractor rather than an employee of the taxicab company where he rented a taxicab from the company for a flat fee of $15.00 for a twenty-four hour period and kept all the fares and tips he earned, the company had no supervision or control over the manner the driver chose to operate the taxicab, the driver had complete control over his work schedule while he used the taxicab, the driver could disregard the company's radio dispatcher, and the driver could use the taxicab for his own purposes during the time it was rented.

APPEAL by plaintiff from order of North Carolina Industrial Commission entered 19 December 1975. Heard in the Court of Appeals 2 September 1976.

This workmen's compensation action arose from a 24 September 1971 shooting of Alford, a taxicab driver. A dispatcher for Victory Cab Company, Inc. (Victory) quarreled with and shot Alford in the mistaken belief that Alford had not paid money owed to Victory. Alford was permanently paralyzed as a result of his injuries.

Alford's claim was originally heard by Deputy Commissioner C. A. Dandelake. Alford attempted to show that Victory was a common carrier engaged in the transportation of passengers for hire and that Victory exercised enough control over his

activities to make him an employee. Victory presented evidence to show that it was in the business of leasing taxicabs to drivers, such as Alford, who were independent contractors. Evidence presented by the parties conflicts very little.

Much of the relationship between Alford and Victory was controlled by the City of Charlotte Municipal Code, Chapter 19, which was placed in evidence. Pursuant to the Code, Victory had obtained 50 certificates of public convenience and necessity licensing it to operate 50 taxicabs in Charlotte. Such certificates were only available to cab owners, and without these certificates an owner could not operate cabs. In order to retain a certificate a cab owner had to comply with statutory fare schedules, give fare receipts bearing its name, provide standard safety equipment, paint all its cabs the same distinct color, and identify them by painting its name and phone number on the sides and rear of the cabs. Further, the owner had to provide liability insurance, post a security bond, or deposit securities to protect its passengers and the public in case of accident. The Code also permitted the owner to enter into one of several employment relationships with its drivers. The owner could pay a fixed wage or commission to its drivers, or it could enter into a lease agreement whereby the driver paid the owner a fixed amount for the use of the cab for one day and then kept all or a portion of the fares and tips earned that day. The lessee was designated an independent contractor under this lease arrangement.

The Code also regulated the conduct of taxicab drivers. It required them to be in good health, of good character and without a felony record. No person could drive a taxicab without a permit from the City, and a permit was revocable for violation of either the criminal statutes or the City Code pertaining to taxicabs. The Code also regulated much of the driver's conduct in operating his cab. For example, it forbade him to smoke, to refuse the reasonable requests of his passengers, to solicit passengers, to cruise in search of passengers, to carry too many passengers, or to accept additional passengers once his cab was occupied.

Victory also operated a terminal garage where it serviced its own cabs and sold gasoline through a sister corporation. At the time of the accident, Victory actually operated only 20 taxicabs because it was unable to find drivers for the rest. All of Victory's drivers were compensated in the same manner. They

paid $15 rental to Victory each day in exchange for a taxicab which they could use for 24 hours. The drivers were allowed to keep all of the fares and tips they collected, less the cost of gasoline they purchased. This arrangement was usually renewed each day, but Victory was not obligated to renew it with any driver. A driver who violated the City Code, broke Victory's rules, or otherwise failed to satisfy the company would not be given a taxi. Moreover, a driver who gave poor service was likely to be given an older and less desirable cab.

Most of Victory's drivers were regulars who worked six or seven days a week, and as much as 20 hours a day. Victory kept a list of drivers and the cabs they drove. However, Victory did not carry them on its payroll, or withhold income tax or social security deductions. Pursuant to the City Code, Victory required its drivers to wear uniforms, be physically fit and refrain from immoral or illegal conduct.

Victory also provided a radio dispatcher who would send drivers to pick up nearby passengers. These calls were allocated among the drivers who had some freedom to refuse the dispatcher's instructions. Refusals were ordinary but not too frequent. Alford, for example, only refused instructions to go to a particular dangerous neighborhood.

Robert A. Isenhour, president of Victory, testified that once the company received its $15, it did not care what the driver did. He also testified that he wanted the drivers to make money for the good of the company, that he held the company out to the public as a cab company, that he permitted drivers to fall behind in their rent without taking their cabs, that the company held business and safety meetings for its drivers and, in substance, supervised their conduct and compliance with the City Code. Isenhour further testified that he could not fire a driver, but he also said he could let a driver go or otherwise "work out a way to get rid of" an unsatisfactory driver. Isenhour testified that he considered the contracts with the drivers to be leases. He also referred to them as a "pay system," and again as a "payroll system," indicating that he thought of them as a method whereby the company compensated the drivers. He spoke of times when the company "gave [drivers] a day off."

Johnny Alford, plaintiff, testified that he was an experienced cab driver who knew how to do a good job. He further testified that Victory exercised considerable control over his

work as a cabbie in that the company assigned him his cab, supervised his compliance with company rules and city ordinances, dispatched him on many of his calls, and effectively required him to work long hours in order to protect his privilege to use a desirable cab.

On this evidence, Deputy Commissioner Dandelake found that Alford rented a taxicab from Victory Cab Company, Inc., for $15 a day, that he kept all his fares and tips, and that he was not controlled by the dispatcher. The plaintiff excepted to the finding that the dispatcher did not control Alford. The Deputy Commissioner further concluded that Alford was an independent contractor instead of an employee since Victory had no right to control him. The Deputy Commissioner concluded that the Industrial Commission lacked jurisdiction to award workmen's compensation and, accordingly, dismissed Alford's claim. Plaintiff excepted to these conclusions and appealed to the Full Commission. The Commission affirmed the order of the Deputy Commissioner, and from this, plaintiff appeals.

*Barry M. Storick for plaintiff appellant.*

*Hedrick, Parham, Helms, Kellam & Feerick, by Phillip R. Hedrick and Edward L. Eatman, Jr., for defendant appellees.*

ARNOLD, Judge.

This appeal presents the question of whether appellant was an employee or an independent contractor. Appellant contends that he was not an independent contractor. He supports his argument by several cases from other jurisdictions. Our research reveals additional authority outside this State in support of the contention that a taxicab driver who rents his cab and keeps his fares and tips as compensation is an employee. *Naseef v. Cord, Inc.,* 48 N.J. 317, 225 A. 2d 343 (1966); *Hannigan v. Goldfarb,* 53 N.J. Super. 190, 147 A. 2d 56 (1958); *Morgan Cab Co. v. Industrial Comm'n,* 60 Ill. 2d 92, 324 N.E. 2d 425 (1975); *Golosh v. Cherokee Cab Co.,* 226 Ga. 636, 176 S.E. 2d 925 (1970); *White Top & Safeway Cab Co. v. Wright,* 171 So. 2d 510 (Miss. 1965). *See, Salt Lake Transportation Co. v. Bd. of Review,* 5 Utah 2d 87, 296 P. 2d 983 (1956). *Contra, Coviello v. Indus. Comm'n of Ohio,* 129 Ohio St. 589, 196 N.E. 661 (1935).

Of the few states which have considered the employment status of a claimant on the facts as presented here, a majority

appear to consider the claimant an employee for purposes of workmen's compensation. In determining whether the claimant is an employee entitled to compensation many of these cases turn on the nature of the claimant's work in relation to the business for which the work is being done. *(See,* Larson, Workmen's Compensation, § 43.42 et seq. (1972 ed.).)

The test we must employ to determine appellant's employment status turns on the amount of control exercised over the claimant. As stated in *Little v. Poole,* 11 N.C. App. 597, 601, 182 S.E. 2d 206, 209 (1971) :

"The test for determining whether a relationship between parties is that of employer and employee, or that of employer and independent contractor, is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing work, as distinguished from the right merely to require certain definite results conforming to the contract."

Findings of fact support the Commissioners' conclusion that appellant was an independent contractor, because the right of control did not rest in Victory. Claimant rented a taxicab from Victory for a twenty-four hour period for a flat fee of $15, and Victory had no supervision or control over the manner or method claimant chose to operate that cab. Claimant had complete control over his work schedule while he used the cab. He could disregard the radio dispatcher, use the cab for his own purposes during the time it was rented, and he kept all the fares and tips he earned. *Askew v. Tire Co.,* 264 N.C. 168, 141 S.E. 2d 280 (1965) ; *Hayes v. Elon College,* 224 N.C. 111, 29 S.E. 2d 137 (1944) ; *Millard v. Hoffman, Butler & Associates,* 29 N.C. App. 327, 224 S.E. 2d 237 (1976).

The opinion and award of the Industrial Commission is

Affirmed.

Judges BRITT and MORRIS concur.