RICHARD DEAN FULCHER, BY HIS GUARDIAN AD LITEM BARBARA WALL, AND MR. AND MRS. R.H. WALL, PARENTS OF THE DECEASED EMPLOYEE RICHARD WALL, PLAINTIFFS v. WILLARD'S CAB COMPANY, NON-INSURED, EMPLOYER, DEFENDANT

No. COA98-282

(Filed 19 January 1999)

1. Evidence— employer-employee relationship—memoranda and affidavit—dated after decedent's death—not probative

In a workers' compensation action arising from the death of a taxicab driver, an affidavit from another driver of taxicabs owned by defendant which contained memoranda should not have been relied upon by the Commission because the memoranda and affidavit were dated after the driver's death. They are not probative of whether an employee-employer relationship existed between the driver and defendant at the time of the driver's death.

2. Workers' Compensation— employer-employee relationship—leased taxicab

The Industrial Commission erred in a workers' compensation action by finding that an employer-employee relationship existed between a taxicab driver and defendant where the driver was fatally wounded while operating a taxicab leased from defendant. Standing alone, provisions in the contract between the driver and defendant regarding possession of handguns while driving the leased taxicab and permission for any other person to operate the cab do not establish that the driver was defendant's employee.

Judge GREENE concurring in the result.

Appeal by defendant from opinion and award entered 5 September 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 November 1998.

*Parrish, Newton & Rabil, LLP, by Daniel R. Johnston and Carl F. Parrish, for plaintiff-appellee Richard Dean Fulcher.*

*Davis and Hamrick, L.L.P., by Shannon L. Warf, L. Kathryn Slocumb, and H. Lee Davis, Jr., for defendant-appellant.*

LEWIS, Judge.

Defendant Willard's Cab Company has a franchise from the City of Winston-Salem to operate a taxicab business. It owns a number of

FULCHER v. WILLARD'S CAB CO.

[132 N.C. App. 74 (1999)]

vehicles equipped for use as taxicabs. On 26 October 1994, defendant and Byron Richard Wall entered into a contract in which defendant was designated as "lessor" and Wall was designated as "lessee." Defendant agreed to rent a taxicab in good condition to Wall, to provide liability insurance on the taxicab, and to maintain it. Wall was to pay defendant for the use of a taxicab each time he drove one. This "per-shift" fee was $55.00. The lease provided that Wall was free from defendant's "control or direction," and that he was to "exercise complete discretion in the operation" of the leased taxicab. Wall was to keep all fees and tips he collected, and he was not restricted to any specific geographic area in the operation of his taxicab. He was also free to take or refuse calls from defendant's dispatcher.

The lease expressly denied any employer-employee relationship between Wall and defendant. Defendant did not withhold income taxes or Social Security taxes from Wall. The lease further provided that Wall was not to "carry or possess a handgun" while operating the vehicle, and was not to "permit . . . the operation of the . . . vehicle as a taxicab by any person other than . . . himself." Wall was also required to comply with certain Winston-Salem ordinances regulating the operation of taxicabs.

On 1 November 1994, Wall was operating a taxicab leased from defendant. He accepted a dispatch to pick up a passenger at approximately 1:00 a.m. About 1:35 a.m., he was found outside his cab, bleeding from a gunshot wound to the back of the head. He later died as a result of the wound.

The decedent's estate filed a workers' compensation claim some time prior to 18 December 1995. Some time between 6 February 1996 and 6 June 1996, the decedent's dependent child, Richard Dean Fulcher, and the decedent's parents, Mr. and Mrs. R.H. Wall, were substituted as plaintiffs. Fulcher is represented by his mother and guardian ad litem, Barbara Wall.

Sustaining the decision of the deputy commissioner, the Full Commission found that an employer-employee relationship existed and that Wall was fatally wounded in the course and scope of his employment. It confirmed the award of benefits to the plaintiffs.

On appeal, defendant contends that the Commission erred by admitting into evidence the affidavit of Spurgeon W. Wood, by finding that an employer-employee relationship existed between Wall and defendant, and by finding that the death of Wall was attributable to an accident arising out of and in the course of his employment.

FULCHER v. WILLARD'S CAB CO.

[132 N.C. App. 74 (1999)]

I

[1] After evidence was presented to the deputy commissioner, plaintiffs were allowed to introduce into evidence an affidavit of Spurgeon Wood, who also drove taxicabs owned by defendant. The affidavit contained two memoranda dated 17 November 1994 and 22 August 1995 respectively. The November 1994 memorandum informed "All Drivers" that thenceforth, there would be different check-in times and the drivers could select their times. The August 1995 memorandum, addressed to "All Owner Operators," stated that they would "be given two weeks of vacation on their vehicles." Defendant contends that these documents should not have been admitted for the purpose of establishing that Wall was defendant's employee. We agree.

" 'As a general rule, mere . . . proof of the existence of a condition or state of facts at a given time . . . does not raise any presumption that the same condition or facts existed at a prior date.' " *Sloan v. Light Co.*, 248 N.C. 125, 133, 102 S.E.2d 822, 828 (1958) (quoting 31 C.J.S. Evidence, § 140). The memoranda and affidavit are dated after Wall's death. They are not probative of whether an employee-employer relationship existed between Wall and defendant at the time of Wall's death. The Commission should not have relied on them to reach its decision. The Commission's Finding of Fact Number Nine, to the effect that on 1 November 1994 defendant had "a schedule requiring drivers to check in at specified times," is not supported by competent evidence.

II

[2] We next consider whether Wall was an employee of defendant at the time of his death. "[T]he existence of the employer-employee relationship at the time of the accident is a jurisdictional fact. . . . The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." *Lucas v. Li'l General Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976). The law applicable to this issue is summarized in *Gordon v. Garner*, 127 N.C. App. 649, 658-59, 493 S.E.2d 58, 63 (1997) (footnotes omitted), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 86 (1998):

> In *Hayes v. Elon College*, [224 N.C. 11, 29 S.E.2d 137 (1944),] our Supreme Court concluded that the central issue in determining whether one is an independent contractor or an employee is whether the hiring party "retained the right of control or superin-

**FULCHER v. WILLARD'S CAB CO.**

[132 N.C. App. 74 (1999)]

tendence over the contractor or employee as to details." [*Id.* at 15, 29 S.E.2d at 140.] The court then went on to explain that there are generally eight factors to be considered, none of which are by themselves determinative, when deciding the degree of control exercised in a given situation. These factors include whether . . . "[t]he person employed (a) is engaged in an independent business, calling or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time." [*Id.* at 16, 29 S.E.2d at 140.]

In this case, the Commission's findings of fact do not support its conclusion that an employer-employee relationship existed between defendant and Wall. These findings indicate that "the right of control did not rest" with defendant. *Alford v. Victory Cab Co.*, 30 N.C. App. 657, 661, 228 S.E.2d 43, 46 (1976).

*Alford* also involved a taxicab driver who leased his vehicle for a fixed amount per shift and retained his fares and tips. There, on the issue of the driver's employment status, we said,

Findings of fact support the Commissioners' conclusion that appellant was an independent contractor, because the right of control did not rest in Victory. Claimant rented a taxicab from Victory for a twenty-four hour period for a flat fee of $15, and Victory had no supervision or control over the manner or method claimant chose to operate that cab. Claimant had complete control over his work schedule while he used the cab. He could disregard the radio dispatcher, use the cab for his own purposes during the time it was rented, and he kept all the fares and tips he earned.

*Id.* at 661, 228 S.E.2d at 46 (citations omitted).

Plaintiffs argue that this case is distinguishable from *Alford* because here, (1) Wall was obligated by his contract with defendant not to carry or possess a handgun while driving defendant's taxicab and not to permit any other person to operate the cab, and (2) the contract states that the handgun restriction was "in the interest of

both parties to enhance the public image, promote personal safety and increase revenues." While these provisions do show that defendant exerted some control over Wall's work, they are the only such evidence of an employer-employee relationship. Standing alone, they do not establish that Wall was defendant's employee.

As noted above, the *Hayes* court indicated that when a worker has the "free[dom] to use such assistants as he may think proper," it suggests that he is an independent contractor rather than an employee; in contrast, *Hayes* implies, a worker is more likely to be an employee of another when the other party has prohibited him from procuring and using assistants. 224 N.C. at 16, 29 S.E.2d at 140. In this case, however, the contractual provision prohibiting non-lessees from operating defendant's taxicabs does *not* demonstrate defendant's employer-like control over Wall. Rather, this provision was designed to protect defendant's property from being operated by persons it had not approved. This case is not a case like *Hayes*, where a contract for the installation of six telephone poles and the transfer of electrical wires from old poles to the new poles prohibited the installer from choosing and hiring his own assistants. Performance of the *Hayes* contract *required* the labor of many people, whereas the performance of Wall's side of the contract in this case required the labor of just one person: Wall, the cab driver.

The Commission's findings do not show that defendant had the right to exert an employer's degree of control over Wall. Because an employer-employee relationship is a prerequisite to coverage by, and recovery under, the Workers' Compensation Act, *see* N.C. Gen. Stat. § 97-2 (Cum. Supp. 1997), § 97-3 (1991); *Lucas*, 289 N.C. at 218, 221 S.E.2d at 261, and because that relationship is lacking in this case, we need not reach defendant's remaining assignment of error.

Reversed.

Judge HORTON concurs.

Judge GREENE concurs in the result.

**FULCHER v. WILLARD'S CAB CO.**

[132 N.C. App. 74 (1999)]

Judge GREENE concurring in the result.

I do not agree that Wall was an independent contractor, but because I believe his injury was not an accident arising out of and in the course of his employment, I agree with the majority that the award of the Commission must be reversed.[1]

There are several items of evidence, necessary for my analysis, not included in the recitation of the facts by the majority. The evidence revealed Wall was shot in the back of the head, shell casings were found in the back seat of the taxicab, and Wall's blood was found splattered on the inside of the taxicab's windshield. The Commission found Defendant knew many of the customers seeking taxicab service were dangerous, the killing of Wall was "an unlooked for and untoward event," and Wall was shot in the back of the head at 1:35 a.m. "while operating the taxicab."

The Commission concluded: (1) there was an employer-employee relationship between Wall and Defendant on 1 November 1994; and (2) the death of Wall on 1 November 1994 was an injury by accident arising out of and in the course of his employment.

I

*Employee or Independent Contractor*

The ultimate test for determining whether an employer-employee relationship exists, rather than that of an employer and independent contractor, is the extent to which the party for whom the work is being done has the right to control the manner and method in which the work is performed. *Hayes v. Elon College*, 224 N.C. 11, 15-16, 29 S.E.2d 137, 140 (1944). The *Hayes* court enunciated several factors that can be used in making this determination, including the freedom to use such assistants as the person employed thinks proper. *Id.*

In this case, Defendant owned a taxicab franchise and entered into a contract with drivers and owners for the operation of the taxicabs. The driver paid for his own gasoline, collected and kept his own fares, and worked at his own schedule. The fares were controlled, not by Defendant, but by the City of Winston-Salem. The drivers were not able to possess firearms while operating the taxicabs, nor were they allowed to permit any other person to assist them in the operation of the taxicabs. Although the relationship has some indicia of an independent contractor, I believe Defendant's self-imposed prohibitions

---

1. Because I also agree with Part I of the majority's opinion, I will not address that issue.

against the possession of firearms and the use of assistants moves this relationship into one of employer-employee. *Cf. Alford v. Cab Co.*, 30 N.C. App. 657, 228 S.E.2d 43 (1976) (city imposed controls over taxicab driver not sufficient to justify classification of driver as employee). The fact that the handgun restriction may have been "in the interest of both parties" is not material, as it was nonetheless a restriction imposed by the Defendant. Likewise, though the prohibition against the use of assistants may have been designed to protect Defendant's property, it was still a restriction imposed by Defendant. It surely cannot be disputed that these two restrictions constitute some control of the manner and method in which the driving of the taxicab was to be performed.

Any effort by the majority to distinguish the facts in *Hayes* from the facts in this case is not helpful. Indeed, the facts are different, but the issue is the same: whether there was control over the manner and method of doing the work. Here the work of driving the taxicab only requires one person, as noted by the majority, but it did not, in the absence of the restriction on the use of assistants, have to be Wall.

II

Under the North Carolina Workers' Compensation Act (Act), an injury is compensable if it is: (1) by accident; (2) arising out of the employment; and (3) in the course of the employment. N.C.G.S. § 97-2(6) (Supp. 1997); *Robbins v. Nicholson*, 281 N.C. 234, 238, 188 S.E.2d 350, 353 (1972). Whether the injury is an accident arising out of and in the course of the employment is a mixed question of law and fact. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). In other words, this Court is bound by the Commission's findings of how, when, and where the injury occurred, provided those findings are supported by competent evidence. Whether those findings support the conclusion that the injury was an accident arising out of and in the course of the employment presents a question of law and is fully reviewable on appeal.

*Accident*

An accident is an unusual event or result which is not expected or designed by the injured employee. *Adams v. Burlington Industries*, 61 N.C. App. 258, 300 S.E.2d 455 (1983). As a general proposition, therefore, if an injury occurs under normal work conditions and the employee was injured while performing his regular duties in the usual and customary manner, there is no accident within the meaning of the Act. *Porter v. Shelby Knit, Inc.*, 46 N.C. App. 22, 264 S.E.2d 360

(1980). Assaults may constitute an accident, if they are unexpected and without design on the part of the employee who suffers the assault. *Gallimore*, 292 N.C. at 402, 233 S.E.2d at 531.

Defendant argues that the assault against Wall in this case was expected and thus not an accident within the meaning of the Act. Defendant suggests the finding by the Commission that the operation of a taxicab is a dangerous activity supports its argument. I disagree.

Defendant's argument necessarily rests on the premise that an injury is expected if the injured employee is employed to perform a dangerous job, and is injured while performing that job. If our courts accepted this premise, employees would receive no protection under the Act, when performing the very job they were employed to perform, if the job is dangerous and the injury is related to the dangerous activity. For example, there would be no workers' compensation coverage for the police officer assigned to the bomb squad, if the bomb goes off when he is trying to disarm it. Additionally, there would be no coverage for the coal miner who enters into the coal mine to dig the coal and is injured in the process. I therefore reject Defendant's argument and would hold that the finding of the Commission that Wall, a taxicab driver, was shot in the back of the head, an unexpected event, supports its conclusion that his death was an accident within the meaning of the Act. *See* 2 Arthur Larson, *Larson's Workers' Compensation Law* § 37.20 (1998).

### Arising out of and in the Course of the Employment

"Arising out of employment," refers to the manner in which the injury occurred, its cause. *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E.2d 865 (1963). In other words, whether the injury was a natural and probable consequence of the employment. *Perry v. Bakeries Co.*, 262 N.C. 272, 136 S.E.2d 643 (1964). If the injury is caused by a "hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it does not arise out of the employment." *Cole v. Guilford County*, 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963).

"In the course of the employment" refers to the time, place, and circumstances under which the injury occurs. *Robbins*, 281 N.C. at 238, 188 S.E.2d at 353. The ultimate inquiry is whether the employee was, at the time of the injury, doing the work of his employer. Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation* § 6-1 (2d ed. 1995). An injury to an employee while he is performing acts "solely for the benefit or purpose of the employee or a third person" are not

compensable. *Lewis v. Tobacco Co.*, 260 N.C. 410, 412, 132 S.E.2d 877, 879 (1963).

In this case, the Commission found as fact that Wall was shot in the back of the head at 1:35 a.m. "while operating the taxicab." There is no dispute that he was dispatched at 1:00 a.m. to a location in Winston-Salem. There are no findings and there is no evidence, however, on whether the person who shot Wall was the person who requested the dispatch, a person about to be or being transported for the benefit of Defendant, a person assaulting Wall as he was doing the business of Defendant, or an assault occurring at a time while Wall was not doing the work of Defendant. The fact that Wall was killed at 1:35 a.m. "while operating the taxicab," after having received a 1:00 a.m. dispatch, does not answer the question of whether he was operating the taxicab at the time of the killing and in the work of Defendant. Because Plaintiffs had the burden of proving each element of their claim, *Taylor*, 260 N.C. at 437, 132 S.E.2d at 867, and failed to meet this burden, the Commission erred in concluding that Wall was killed arising out of and in the course of his employment with Defendant.[2] Accordingly, though Wall was an employee of Defendant, I would reverse the Commission's award because his injury, though an accident, did not arise out of and in the course of his employment with Defendant.

_____

2. Plaintiffs argue in their brief to this Court that the person "who pled guilty to murdering" Wall formerly resided at the address where Wall was dispatched and this evidence supports the conclusion that Wall was killed while transporting the killer pursuant to the dispatch. The facts upon which this argument is based simply are not supported by either the findings of the Commission or the evidence. Furthermore, Plaintiffs' argument that Defendant presented no "alternative theory of the murder" is to no avail, as Plaintiffs had the burden in this case.