564 S.E.2d 110

Dennis NELSON, Deceased Employee, By and
Through His Estate, Respondent,

v.

YELLOW CAB COMPANY, Employer, and Travelers Property
Casualty Company, Carrier, Petitioners.

No. 25467.

Supreme Court of South Carolina.

Heard March 19, 2002.

Decided May 20, 2002.

Rehearing Denied June 12, 2002.

590

Johnnie W. Baxley, III, of Pratt–Thomas, Epting & Walker, of Charleston, for petitioners.

Carl H. Jacobson, of Uricchio, Howe & Krell, of Charleston, for respondent.

Justice WALLER.

We issued a writ of certiorari to review the Court of Appeals' opinion in *Nelson v. Yellow Cab Co.*, 343 S.C. 102, 538 S.E.2d 276 (Ct.App.2000).

## FACTS

Nelson, a cab driver for Yellow Cab, was murdered while driving his cab on January 6, 1998. His estate filed for Workers' Compensation benefits. The single commissioner ruled Nelson was an independent contractor not entitled to benefits; the full commission reversed, finding Nelson was an employee. The circuit court reversed the full commission, finding him an independent contractor; the Court of Appeals reversed the circuit court, finding Nelson was an employee entitled to compensation.

As stated by the Court of Appeals, the relationship of Nelson and Yellow Cab was as follows:

Yellow Cab hired Nelson in 1995 as a part-time taxi driver. During his tenure at Yellow Cab, Nelson gradually increased the number of shifts he worked. In addition, Nelson was employed as a postal worker.

On January 6, 1998, Yellow Cab dispatched Nelson to pick up a passenger in North Charleston for transport to the West Ashley area. Nelson was murdered, apparently by the passenger. The sole question to be determined on appeal is whether Nelson was an employee or an independent contractor of Yellow Cab at the time of his death.

Yellow Cab requires taxi drivers to file an application for employment. The application form reads:

This is to certify that although I drive a taxicab owned and/or operated by Yellow Cab Company ... I am in no way employed by the company:[1] that I receive [sic] no

---

[1]. This Court has recognized that language in a contract declaring the relationship is that of an employer/independent contractor is not dis-

salary or other compensation from the company, and that my only financial relationship with the company is to pay rent on the cab I drive, to pay for the gasoline used by me on my shift, and to return the cab with all keys and equipment in good condition at the end of my shift. In consideration of the expense in my training and indoctrination, I agree and understand that I must drive a company car owned by Yellow Cab Co. and not a terminal fee contractor for at least six months after my indoctrination period.

All drivers must sign the application before working for Yellow Cab.

In conflict with the relationship expressed in the application form, Yellow Cab exercises control over the driver's behavior while in the taxi, and the manner in which the drivers perform their jobs. Yellow Cab's "Drivers Information and Training Package" includes numerous rules and regulations governing the drivers. For instance, although there is no uniform for the drivers, Yellow Cab imposes a dress code, prohibiting unbuttoned and/or sleeveless shirts, and requiring a neat, orderly appearance. Failure to observe the dress code is a ground for termination of employment.

Further, in accordance with fares set by the City of Charleston, Yellow Cab mandates a set fare, and drivers must transport four people for the price of one fare. The drivers are bound to use a Yellow Cab meter as opposed to an Ever Ready Dispatch, or charging flat rates. Yellow Cab is the only cab company in the area that uses meters to establish taxi fares. Yellow Cab acknowledged that a driver's failure to use a Yellow Cab meter constitutes a ground for termination. The drivers are subject to the Yellow Cab rule prohibiting drivers from transporting non-paying passengers ("dead-heading"). Yellow Cab admitted dead-heading by a driver was cause for termination.

There are numerous other grounds for termination of a taxi driver by Yellow Cab including: possessing a weapon of any kind in the taxi; drinking or using drugs while operat-

positive of the issue. *Kilgore Group Inc. v. South Carolina Employment Security Comm'n,* 313 S.C. 65, 437 S.E.2d 48 (1993).

ing the taxi; failing to deliver packages; and filing a false application. Yellow Cab conceded it could fire a driver for any reason.

The drivers generally retain their fares. However, Yellow Cab makes payments to the drivers under special fare situations in which a driver picks up a certain fare or package, a blue card is issued by the company calling for the pickup, and the driver turns the card into Yellow Cab for payment. These customers are charge account customers billed directly by Yellow Cab. Yellow Cab neither withholds taxes from the drivers' fares nor issues W–2 or 1099 forms to the drivers. On his tax return, Nelson reported his taxi fares as income from a sole proprietorship.

The drivers lease their taxis from Yellow Cab, paying for either twelve or twenty-four hour shifts. Nelson leased his taxi for twenty-four hour shifts at $79 per day. The taxis are painted yellow and identified as Yellow Cab vehicles. Yellow Cab furnishes the radio and use of the dispatch service. The drivers pay for their own gas. The company pays for insurance, a portion of which is collected from the drivers, and repairs on the vehicles.

The drivers select the number of hours they want to work during the twenty-four hour shift. Whenever a driver checks in as operating the vehicle as a taxi, he is required to have the radio on and respond to the dispatcher. Yellow Cab allows the drivers to earn "vacation," which is paid in the form of Yellow Cab giving a car to a driver without requiring lease fees. Once the drivers pay the lease fee, they are entitled to personal use of the taxi whenever they are not checked in as operating the vehicle.

On the evening Nelson was murdered, Nelson was dispatched by a Yellow Cab dispatcher to pick up the fare.

## ISSUE

Did the Court of Appeals err in ruling Nelson was an employee of Yellow Cab rather than an independent contractor?

## DISCUSSION

 Workers' compensation awards are authorized only if an employer-employee relationship exists at the time of the injury. *Dawkins v. Jordan,* 341 S.C. 434, 534 S.E.2d 700 (2000). Whether or not an employer-employee relationship exists is a jurisdictional question. *Id.; South Carolina Workers' Compensation Comm'r v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995). Where the issue involves jurisdiction, this Court can take its own view of the preponderance of the evidence. *Id.* It is South Carolina's policy to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act. *Id.*

 Whether a worker is an employee or independent contractor is a fact-specific matter resolved by applying certain established principles. "The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment." *Young v. Warr,* 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969). The *Young* Court stated,

> An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work.... [W]here one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent
> ....

*Id.* at 189, 165 S.E.2d at 802. There are four elements which determine the right of control: 1) direct evidence of the right or exercise of control; 2) furnishing of equipment; 3) right to fire; and 4) method of payment. *Dawkins, supra; Tharpe v. G.E. Moore Co.,* 254 S.C. 196, 174 S.E.2d 397 (1970). These factors, however, go only to the right of control. As we noted in *Dawkins,*

> [F]or the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment

relation; while, in the opposite direction, contrary evidence is as to any one factor at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all. 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 61.04 (2000).

341 S.C. at 439, 534 S.E.2d at 703.

As noted by the Court of Appeals in this case, there is a split of authority on whether a taxi driver, who leases a taxicab under a per diem payment agreement and keeps his fares and tips as compensation, is an employee or independent contractor. The majority of cases hold that under such circumstances, the cab driver is an employee by virtue of the cab company's exercise of control. *See Central Management v. Industrial Comm'n of Arizona,* 162 Ariz. 187, 781 P.2d 1374 (1989); *Yellow Cab Co. v. Workers' Comp. Appeal Board,* 226 Cal.App.3d 1288, 277 Cal.Rptr. 434 (1991); *Bowdoin v. Anchor Cab,* 643 So.2d 42 (Fla.Dist.Ct.App.1994); *Yellow Cab Co. v. Karwoski,* 226 Ga.App. 63, 486 S.E.2d 39 (1997); *Yellow Cab Co. v. Industrial Comm'n,* 124 Ill.App.3d 644, 80 Ill.Dec. 96, 464 N.E.2d 1079 (1984); *Purchase Transp. Svcs. v. Estate of Wilson,* 39 S.W.3d 816 (Ky.2001); *White Top and Safeway Cab Co. v. Wright,* 251 Miss. 830, 171 So.2d 510 (1965); *Walls v. Allen Cab Co.,* 903 S.W.2d 937 (Mo.App.E.D.1995); *Hemmerling v. Happy Cab Co.,* 247 Neb. 919, 530 N.W.2d 916 (1995); *Petition of City Cab of Manchester,* 139 N.H. 220, 652 A.2d 1202 (1994); *Naseef v. Cord, Inc.,* 48 N.J. 317, 225 A.2d 343 (1966); *Scott v. Manzi Taxi Svcs,* 179 A.D.2d 949, 579 N.Y.S.2d 225 (1992); *Yellow Cab Co. v. Wills,* 199 Okla. 272, 185 P.2d 689 (Ok.1947); *Nesbit v. Powell,* 558 S.W.2d 436 (Tenn.1977); *Dep't of Labor v. Tacoma Yellow Cab Co.,* 31 Wash.App. 117, 639 P.2d 843 (1982); *C & H Taxi Co. v. Richardson,* 194 W.Va. 696, 461 S.E.2d 442 (1995).[2]

Several jurisdictions have held, under certain factual scenarios, that cab drivers are not employees for purposes of Workers' Compensation statutes. *See Hanson v. Transp. Gen'l, Inc.,* 245 Conn. 613, 716 A.2d 857 (1998); *LaGrande v. B & L*

---

**2.** Cab drivers have also been held to be employees for purposes of unemployment compensation and/or social security purposes. *See Salt Lake Transp. Co. v. Board of Review,* 5 Utah 2d 87, 296 P.2d 983 (1956); *Employment Sec. Comm'n of Wyoming v. Laramie,* 700 P.2d 399 (Wyo. 1985).

*Svcs.,* 432 So.2d 1364 (Fla.Dist.Ct.App.1983); *Cole v. Peach-tree Cab Co.,* 121 Ga.App. 177, 173 S.E.2d 278 (1970); *Alford v. Victory Cab Co.,* 30 N.C.App. 657, 228 S.E.2d 43 (1976); *Walters v. Americab,* 118 Ohio App.3d 180, 692 N.E.2d 234 (1997).

■ Given the very fact-specific nature of our inquiry, we need not follow any one jurisdiction, nor adopt a majority or minority viewpoint.[3] Our determination today hinges upon a review of the factual circumstances concerning Yellow Cab's right to control the method and manner in which Nelson operated his cab. Under the specific factual circumstances presented, we agree with the Court of Appeals that Yellow Cab retained a sufficient degree of control as to warrant the conclusion that he was an employee.

## A. Right of Control

■ Yellow Cab contends it lacked control over Nelson, asserting that once Nelson paid his $79.00 per day lease fee, he could work as little or as much as he wanted, and he could take the cab and drive it wherever he wanted. He could also decide which zone he wanted to drive on a given day and could set his own schedule. While these facts show that Yellow Cab exercised little control over Nelson's determination of when and where to drive his cab, we find the record abundantly demonstrates that, when and if Nelson did choose to drive his cab, Yellow had the right to control the method and means of his doing so.

Yellow Cab required Nelson use his meter on all runs except charge accounts and/or authorized flat rate runs; he

---

**3.** As noted by Yellow Cab, North Carolina has held cab drivers are not employees but independent contractors. *Alford v. Victory Cab Co.,* 30 N.C.App. 657, 228 S.E.2d 43 (1976). *See also Fulcher v. Willard's Cab Co.,* 132 N.C.App. 74, 511 S.E.2d 9 (1999). This Court generally accords North Carolina workers' compensation cases weight because the South Carolina statute was fashioned after North Carolina's. *Anderson v. Baptist Medical Center,* 343 S.C. 487, 541 S.E.2d 526 (2001). However, unlike South Carolina's four-prong test to ascertain employee status, North Carolina employs an eight-prong test. *Fulcher, supra.* Moreover, *Alford* has been criticized by Professor Larson. Accordingly, we decline to adopt the North Carolina view. *Parrott v. Barfield Used Parts,* 206 S.C. 381, 34 S.E.2d 802 (1945) (North Carolina workers' compensation decisions are not binding on this Court).

was not authorized to charge "flat rates" except for plantation tours. Yellow also directed the fares to be charged. He was not allowed to "dead-head," i.e., have any non-paying passengers with him in the cab. He was prohibited by company rules from driving on the docks and picking up passengers at the airport.[4] He was required to comply with the company dress code while driving the cab, including no sleeveless shirts, no flip-flop shoes, and no unbuttoned shirts. He was required to keep a proper manifest sheet, and prohibited from carrying any weapons in the car. Yellow Cab had certain policies and procedures drivers were to follow if dispatched to a charge account fare, and set certain fare minimums. Drivers were awarded "free days" and "vacation days" upon driving a sufficient number of days, and were required to bring cabs in for servicing and to purchase all gas from the "point." They were also required to report any accidents, and were prohibited from "stealing calls," "long-mixing," and "freezing stands." According to the testimony of Yellow Cab's manager, Kenneth Halley, if Nelson was operating as a cab driver for them, he was required to have his radio on and respond to the dispatcher. Drivers were not allowed to sleep while on duty and were subject to being sent home for the remainder of the shift to get some sleep if they did so. They were not allowed to use profanity or would be "off the air" for three days. Yellow Cab did all the advertising for the drivers, and Nelson was given business cards with the company's name on them. Yellow Cab also obtained the annual business license authorizing its drivers to operate a taxi in Charleston.[5] Yellow Cab maintained insurance on the cabs (which was included in the drivers' lease payments).

The amount of control Yellow Cab was able to exercise over Nelson in this case far outweighs the amount of control exercised in *South Carolina Workers' Compensation Comm'r v. Ray Covington Realtors, Inc., supra.* There, although there is **some** factual similarity to this case in that the realtor determined the number of hours he worked each week, he also determined the manner in which he did so without direction or

---

4. Yellow Cab asserts this was a City of Charleston regulation. Nonetheless, it is specifically contained in Yellow Cab's "handbook."

5. Drivers were required, however, to have their own chauffeur's permit.

control by Ray Covington Realtors. Here, although Nelson decided whether and when he chose to drive, each and every time he exercised that option he was subject to substantial rights of control as to the method and manner in which he did so. Accordingly, we find *Covington* factually distinguishable.[6]

The Court of Appeals correctly held this factor leans heavily in favor of a finding of a right of control by Yellow Cab.

### B. Furnishing Equipment

On this factor, although Nelson paid a $79.00 per day lease fee, the cabs were furnished by Yellow Cab.[7] Drivers were required to have maintenance and oil changes performed by Yellow Cab, and to purchase gas from it. Yellow Cab provided insurance, which was included in the $79.00 per day fee. Yellow Cab did the advertising and gave Nelson business cards. Yellow Cab also obtained the business license permit to operate cabs. Nelson was allowed to purchase a Yellow Cab t-shirt if he wanted. We find the furnishing of equipment element relatively neutral.

### C. Right to Fire

This factor weighs in Nelson's favor. Yellow Cab had the right to terminate Nelson for a number of reasons, to wit: drinking and driving, too many accidents, failure to deliver packages, failure to comport with the dress code. They also had the right to fire him for providing any false or incomplete information on his application. It was within Yellow Cab's discretion whether to accept him as a driver. Yellow Cab's manager, Halley, testified it would be grounds for termination if Nelson were caught charging a flat rate instead of a meter rate, dead-heading, carrying a weapon in the cab, or failing to abide by the rules and regulations of Yellow Cab. He also testified that, at any time Yellow Cab wanted, it was free to decide not to lease a cab to Nelson. In addition to the right to fire, Yellow Cab had the right to discipline him for "long-

---

6. Moreover, unlike the present case, the Realtors in *Covington* provided all of their own advertising, and received no vacation days.

7. Other courts have found drivers to be employees, notwithstanding the lease relationship. *See Bowdoin, supra; Yellow Cab v. Industrial Comm'n,* 238 Ill.App.3d 650, 179 Ill.Dec. 691, 606 N.E.2d 523 (1992).

mixing," "freezing stands," "deadheading," stealing calls, picking up calls at the naval base, refusing to pick up charge calls, sleeping on stands, profane and/or vulgar language, and failure to deliver packages.

Yellow Cab cites language in *Ray Covington* to the effect that "[w]hile the fourth factor, the right to fire, weighs here in favor of a finding that Chewning is an employee, the fact that Chewning believed appellant could fire him is not inconsistent with appellant's right to terminate the independent contractor relationship." 318 S.C. at 549, 459 S.E.2d at 303. As indicated above, the right of Yellow Cab to terminate Nelson went far beyond the right to simply terminate an independent contractor relationship.

### D. Method of Payment

This factor weighs in favor of Yellow Cab. Once Nelson paid his $79.00 per day, he was entitled to keep all fares earned during the day. The only exception to this was "charge fares" and/or package pickups. Certain customers had an "account" with Yellow Cab and drivers would collect their fares directly from Yellow Cab. Drivers also received a certain minimum in the event of "running a blank," i.e., if the charge fare did not show up at the dispatched location. Yellow Cab did not provide him any W–2 forms or 1099's. Nelson's Income Tax Returns for 1996 and 1997 indicate he was self-employed.

Although this factor weighs in favor or Yellow Cab, it had **some** degree of control over payment inasmuch as it dictated the amounts Nelson could charge fares and required him to use a meter.

### CONCLUSION

Under the specific facts of this case, consistent with the state's policy of resolving jurisdictional doubts in favor of inclusion of employees under the Workers' Compensation Act, we find the Court of Appeals correctly held Nelson was an employee rather than an independent contractor. Accordingly, the Court of Appeals' opinion is

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.