713 S.E.2d 267

**Robert PIKAART, Respondent,**

v.

**A & A TAXI, INC. and South Carolina Uninsured Employers' Fund, Appellants.**

No. 27003.

Supreme Court of South Carolina.

Heard April 6, 2011.

Decided July 11, 2011.

Brown W. Johnson, of Clarke, Johnson, Peterson & McLean, and Samuel Thompson Brunson, both of Florence, for Appellants.

Charles Vance Leonard, of Harris & Leonard, P.A., of Myrtle Beach, for Respondent.

Justice BEATTY.

A & A Taxi, Inc. and the South Carolina Workers' Compensation Uninsured Employers' Fund (collectively, Appellants) appeal from a circuit court order finding Robert A. Pikaart was an employee of A & A Taxi, Inc. at the time he was injured in two automobile accidents and that he was entitled to certain workers' compensation benefits. Appellants contend Pikaart was an independent contractor, not an employee; therefore, the South Carolina Workers' Compensation Commission has no jurisdiction in this matter. They further argue the circuit court improperly made findings of fact that did not bear on the limited issue of jurisdiction that was before it. We affirm.

## I. FACTS

A & A Taxi, Inc. is a taxi company located in Myrtle Beach, South Carolina. It was formed by Romeo A. Liriani, the company's owner and president.

Pikaart had over twenty years of experience in the taxi business at the time this action arose. Pikaart was involved in two unrelated automobile accidents in Horry County on October 23, 2004 and January 2, 2005 while performing errands for A & A Taxi.[1] In April of 2005, Liriani and Pikaart parted ways. According to Pikaart, he was terminated after he advised Liriani that he would need surgery as a result of his injuries.

Pikaart sought workers' compensation coverage for alleged injuries he sustained to his neck, back, arms, hands, and fingers. A & A Taxi denied responsibility for Pikaart's claims on the basis Pikaart was an independent contractor, not an employee. A & A Taxi did not carry workers' compensation coverage, so the South Carolina Workers' Compensation Uninsured Employers' Fund was made a party to the action.

A hearing was held before a commissioner of the Workers' Compensation Commission. Pikaart testified that he had been employed by Liriani as A & A Taxi's office manager at the time of his accidents. He outlined his duties, which included the following: making a schedule for all of the taxis; implementing a $10 dispatch fee all drivers were required to pay A & A Taxi for dispatch services, which saved the company some overhead costs; processing the trip vouchers that were submitted for every taxi; implementing a rotation system for high-paying fares and a method for selling accounts receivable to provide immediate cash flow; hiring and firing drivers for Liriani; finding independent cabs to take calls

---

1. The first accident occurred when Pikaart used a taxi to pick up a driver who had no transportation to work. The taxi was struck from behind while waiting at a red light. The second accident occurred after Pikaart had driven to a repair shop to check on the status of a mechanical problem with another taxi. Before leaving the shop, Pikaart called a dispatcher to inquire whether they needed any assistance, and he was directed to pick up a paying passenger in Socastee. Pikaart was on his way to pick up the fare when a driver in another car ran a stop sign, and the two collided. A & A Taxi owned the taxis involved in both accidents.

whenever A & A Taxi was fully booked; overseeing vehicle maintenance for the taxis; filling in as a dispatcher and a driver whenever needed; and communicating with insurance companies, City Hall, and others on behalf of A & A Taxi.

In contrast, Liriani testified Pikaart was "never" the manager of A & A Taxi. Liriani stated Pikaart leased five cabs and three certificates (or medallions) from him, and that Pikaart leased two medallions from other individuals and operated all five of those cabs as his own business. He stated Pikaart never performed any duties for him; rather, he just controlled the five cabs he leased.

The commissioner found Pikaart was not an employee of A & A Taxi, but was instead operating his own taxi business. The commissioner concluded the Commission did not have jurisdiction over this case because no employer-employee relationship existed. An Appellate Panel of the Commission upheld the commissioner's order.

Upon review, the circuit court, noting it could take its own view of the preponderance of the evidence on jurisdictional matters, determined Pikaart was the manager of A & A Taxi and therefore an employee. The circuit court stated Pikaart "ran the entire [A & A Taxi] operation and was present every day" and that his "managerial duties [were] extensive." The circuit court noted "it is clear [Pikaart's] overall task was to increase revenue for the company," and "[h]is injuries occurred when furthering the business of [A & A Taxi]." Citing *Nelson v. Yellow Cab Co.*, 349 S.C. 589, 564 S.E.2d 110 (2002), the circuit court found A & A Taxi exercised extensive control over Pikaart as well as the other workers. The circuit court additionally found Pikaart was entitled to certain workers' compensation benefits.

Appellants appealed. Pursuant to Rule 204(b), SCACR, we certified this case from the Court of Appeals.

## II. STANDARD OF REVIEW

The Administrative Procedures Act (APA) establishes the standard for judicial review of workers' compensation decisions. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 689 S.E.2d 615 (2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). Under the APA, this Court can reverse or modify the

decision of the Commission where the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence considering the record as a whole. *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618; *Transp. Ins. Co. v. South Carolina Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010) (citing S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2009)).

■ An award under workers' compensation law is not authorized unless an employer-employee relationship existed at the time of the injury for which a claim is made. *Crim v. Decorator's Supply*, 291 S.C. 193, 352 S.E.2d 520 (Ct.App. 1987); *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984); *see also* S.C.Code Ann. § 42–1–130 (Supp.2010) (defining "employee" under workers' compensation law to include "every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written....").

■■ The question whether a claimant is an employee or an independent contractor is a jurisdictional issue. *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 676 S.E.2d 700 (2009); *Vines v. Champion Bldg. Prods.*, 315 S.C. 13, 431 S.E.2d 585 (1993). Where the disputed issue concerns jurisdiction, this Court may take its own view of the preponderance of the facts upon which jurisdiction is dependent. *Wilson v. Georgetown County*, 316 S.C. 92, 447 S.E.2d 841 (1994); *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996).

■ It is South Carolina's policy to resolve jurisdictional questions in favor of inclusion of employees within workers' compensation coverage rather than exclusion. *Shuler v. Tri-County Elec. Co-op*, 385 S.C. 470, 684 S.E.2d 765 (2009); *Hill v. Eagle Motor Lines*, 373 S.C. 422, 645 S.E.2d 424 (2007); *Pilgrim v. Eaton*, 391 S.C. 38, 703 S.E.2d 241 (Ct.App.2010).

Although we may take our own view of the preponderance of the evidence on matters affecting jurisdiction, this broader scope of review does not require this Court to ignore the findings of the Commission, which was in a better position to evaluate the credibility of the witnesses. *Paschal v. Price*, 392

S.C. 128, 133, 708 S.E.2d 771, 773 (2011); *Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000).

## III. LAW/ANALYSIS

On appeal, Appellants contend the circuit court erred in (1) finding Pikaart was an employee of A & A Taxi, rather than an independent contractor, and (2) making findings of fact numbered one through nine because they do not relate to the limited issue of jurisdiction that was before the court.

### A. Employee Versus Independent Contractor

■ Under South Carolina law, the primary consideration in determining whether an employer-employee relationship exists is whether the purported employer has the right to control the employee in the performance of the work and the manner in which it is done. *Kilgore Group, Inc. v. South Carolina Employment Sec. Comm'n*, 313 S.C. 65, 437 S.E.2d 48 (1993). "The test is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking." Id. at 68, 437 S.E.2d at 49.[2]

■ The four principal factors indicating the right of control are (1) direct evidence of the right to, or exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *South Carolina Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 459 S.E.2d 302 (1995); *Chavis v. Watkins*, 256 S.C. 30, 180 S.E.2d 648 (1971).

In *Wilkinson*, this Court announced a return to our jurisprudence that evaluates the four factors with equal force in both directions to provide an even-handed and balanced approach. *Wilkinson*, 382 S.C. at 300, 676 S.E.2d at 702. This

---

2. In *Kilgore*, we observed that "[u]nder the South Carolina Employment Security Law, employment is defined to include 'any service performed by any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee....'" *Kilgore*, 313 S.C. at 68, 437 S.E.2d at 49 (quoting S.C.Code Ann. § 41–27–230(1)(b) (1986)). In this case, the Employment Security Commission ruled Pikaart was an employee of A & A Taxi.

overruled the analytical framework previously set forth in *Dawkins v. Jordan,* 341 S.C. 434, 534 S.E.2d 700 (2000) on the basis it unduly weighted the factors in a manner that favored a finding of employment by providing the existence of any single factor was virtually proof of an employment relationship, while contrary evidence as to any one factor was only mildly persuasive evidence of contractorship. Id.

In the current matter, the circuit court found the case of *Nelson v. Yellow Cab Co.,* 349 S.C. 589, 564 S.E.2d 110 (2002) to be controlling. In *Nelson,* we considered the jurisdictional question whether a taxi driver, who had been murdered while driving his cab, was an employee or an independent contractor of Yellow Cab. We noted there was a split of authority as to the status of a taxi driver who leases a taxi under a per diem payment agreement and keeps his fares and tips as compensation, but observed that the majority of cases hold that under such circumstances the taxi driver is an employee by virtue of the cab company's exercise of control. Id. at 595, 564 S.E.2d at 113.

*Wilkinson* expressly overruled *Nelson* to the extent it applied the *Dawkins* test, but this does not alter the fundamental principle established in *Nelson* regarding the taxi driver's employment status. Although the *Nelson* Court recited the *Dawkins* test, as a practical matter, it did not rely upon the presence of only one factor as being determinative of an employment relationship. Rather, it considered in detail all four factors and found by a preponderance of the evidence that these factors, on balance, were indicative of an employment relationship. Therefore, the result in *Nelson* would be the same under the approach announced in *Wilkinson.*

Similarly, in the current appeal, the circuit court recited the *Dawkins* test in passing,[3] but it did not rely upon the presence of only one factor. Instead, the court evaluated all four factors before finding, by a preponderance of the evidence, that an employment relationship existed between Pikaart and A & A Taxi.

Pikaart maintains that "[i]t is clear when considering the *Nelson* factors, even when using the approach approved in

---

3. Wilkinson was published only a couple of days prior to the date the circuit court's order was signed.

[*Wilkinson*], that [he] was an employee of [A & A Taxi] and the decision of the Circuit Court should be affirmed." We agree.

Appellants note in their brief that a number of former drivers testified that Pikaart was the general manager of A & A Taxi and also testified about the degree of control A & A Taxi exerted over them. Appellants concede: "If one of those drivers had been injured, it is clear that under the *Nelson* case, they would have been considered employees." Nevertheless, Appellants argue "those drivers' positions at A & A Taxi, Inc. differed from that of the Claimant, Robert Pikaart."

Appellants deny that Pikaart was ever A & A Taxi's manager, but argue that, even if he was the manager, "he was not injured in that role. He was allegedly injured while driving a cab." The fact that Pikaart was employed as the company's manager (which included duties such as driving a taxi and performing dispatching services when needed), as opposed to being employed *solely* as a taxi driver, does not negate his status as an employee, and Appellants have pointed to no specific evidence to support its assertion that being a manager somehow invalidated his employment status.

Appellants further contend Pikaart was merely leasing five cabs from Liriani and operated those cabs for his own independent business. As in *Nelson*, the fact that Pikaart leased his cabs from A & A Taxi and split the fares with A & A Taxi to receive compensation is typical for the industry and is not determinative that he ran his own taxi company within Liriani's taxi company. As noted in *Nelson*, the majority of jurisdictions considering the question have held that such an arrangement constitutes an employment, not an independent contractor, arrangement. It is clear from the record, and Appellants conceded as much at oral argument, that Pikaart did perform tasks for the benefit of, and on behalf of, A & A Taxi, not strictly for himself. Further, Pikaart took nothing with him when he parted ways with A & A Taxi, and there is no evidence he operated his own independent business.

Appellants next assert that Pikaart has started his own cab company, Red Top Cabs, since parting ways with A & A Taxi. However, Pikaart's activities after leaving A & A Taxi are not

relevant to Pikaart's employment status at the time of the accidents at issue here.

Appellants also state Pikaart has been in the taxi business for over twenty years and during that time he never purchased workers' compensation insurance for his drivers, but he now wants compensation for himself. This point likewise is not relevant to the jurisdictional question of whether Pikaart was an employee or an independent contractor with A & A Taxi at the time of his accidents. Appellants contend this information goes to credibility. But by the same token, Liriani admittedly has never provided workers' compensation coverage to anyone working for him, either, so he is in the same position as Pikaart in this regard.

Although Appellants did not individually address the four factors, we now examine some of the pertinent evidence as it relates to the four individual factors in evaluating the right of control.

## (1) Direct Evidence of the Right to Control

The circuit court noted the workers at A & A Taxi needed advance permission to be taken off of the work schedule, they were not allowed to give out their own phone numbers for business, and all calls were required to go through the dispatcher.

Pikaart, in particular, testified that Liriani required all calls to go through the dispatcher, and he was not allowed to give out his own cell phone number, name, or business card. Liriani controlled the advertising and provided business cards for the workers to use. Further, workers were expected to respond to the dispatcher when called and to make trips as directed. Pikaart said that he would call the dispatcher if he were out of the cab for any reason, such as to get something to eat or use the restroom.

Pikaart primarily performed managerial tasks for Liriani and A & A Taxi, but he also filled in as a dispatcher and he drove cabs when needed. In fact, both of the accidents he is seeking compensation for occurred while he was driving vehicles owned by A & A Taxi and running errands on behalf of the company. Although Pikaart had some discretion as manager and, in fact, came up with several business concepts for

the company, such as the $10 dispatch fee, it is clear from the record that these were all in furtherance of A & A Taxi's business, and Pikaart did not implement any substantial changes without Liriani's consent. We find this factor weighs in favor of an employment relationship.

### (2) Furnishing of Equipment

The circuit court found A & A Taxi furnished the cabs, provided maintenance, and also procured insurance and permits for all cars. It also advertised the company's services and provided business cards and dispatching services, as well as a common paint scheme with the "A & A Taxi" name on all of the cabs. The circuit court noted A & A Taxi also provided a phone number, customers, vouchers, and rules to abide by, and drivers were not allowed to give out personal business cards or contact numbers.

These findings are all supported by the record, as the former workers with A & A Taxi testified that the company provided most of the necessary equipment and services. As to Pikaart in particular, he testified that he did not own the dispatch service and equipment, phone numbers, cabs, or anything else while he was working for A & A Taxi, and he took nothing with him when he left. He further testified that Liriani purchased the city business license. We find this factor weighs heavily in favor of finding an employment relationship.

### (3) Method of Payment

The circuit court found the drivers in this case were allowed to keep fifty percent of their fares, which was similar to the situation in *Nelson*. The circuit court noted Pikaart received payment much the same as the employee in *Nelson*, except that he derived his income from five cabs, rather than from one, and he paid a weekly rate to the employer instead of a daily rate. The circuit court specifically found that Pikaart was not operating his own business within the A & A Taxi business.

Pikaart testified that he was never given a W–2 form or a Form 1099 when he worked at A & A Taxi. However, he said he listed A & A Taxi as his employer on his tax returns.

Further, Pikaart testified that he "derived all of [his] living from A & A Taxi." Liriani confirmed that he never provided Pikaart with either a W–2 form or a Form 1099.

The parties operated primarily on a cash basis, and it appears this was intended to avoid reporting requirements on both sides. Due to the lack of records in this regard, the evidence does not preponderate in favor of either party and we consider this a neutral factor.

### (4) Right to Fire

As noted by the circuit court, several of the witnesses testified that those working at A & A Taxi could be fired for a variety of reasons. For example, Charles Michael Clark, a former driver and dispatcher for A & A Taxi, testified that he had been terminated by Liriani. Clark stated workers could be terminated for a variety of reasons, including failing to pick up a customer or not showing up, drinking on the job, having too many wrecks, making a false application, carrying a weapon, stealing, or cheating on trip sheets, etc.

Pikaart testified that he was fired after he told Liriani that he would need surgery as a result of his accidents. Pikaart stated Liriani would sometimes fire people, but would on occasion direct him or a dispatcher to do the firing.

Upon questioning, Liriani adamantly denied that he could terminate *any* of the workers at A & A Taxi. He was asked if he could terminate them under various extreme scenarios, such as if they didn't show up for work ten days in a row, or if they had ten wrecks in a row, and he said "absolutely not." Liriani even stated that if one of the drivers "blows up the Myrtle Beach Convention Center" (his example), he still could not fire them, but would "report them to the police department." This testimony reflects adversely upon Liriani's credibility. We find this factor also weighs heavily in favor of finding an employment relationship existed.

Based on the foregoing, we hold the circuit court correctly considered the jurisdictional facts and found, by a preponderance of the evidence, that Pikaart was the general manager of A & A Taxi and thus, its employee. Accordingly, the circuit court's determination in this regard is affirmed.

## B. Additional Findings of Fact

■ Appellants next contend that, even if this Court agrees with the circuit court's determination that Pikaart was an employee, the circuit court committed "obvious error" by making additional findings of fact regarding the benefits to which Pikaart is entitled. Appellants state these findings encompassed such matters as the compensability of Pikaart's claims, his average weekly wage, the dates for which he was to receive benefits, and his entitlement to additional medical care.

Appellants state the Commission never reached the issue of benefits because it found it had no jurisdiction. Appellants assert these findings go beyond the limited jurisdictional issue presented on appeal, i.e., whether an employer-employee relationship existed, and the circuit court lacks the authority to make its own findings of fact on issues not related to jurisdiction. Instead, such issues should have been remanded to the Commission.

Although the circuit court committed error for the reasons stated by Appellants, there is no indication in the record that Appellants ever presented this argument to the circuit court to allow it the opportunity to amend its ruling. Thus, any error was not preserved and it is not properly before this Court.

■ A matter may not be presented for the first time on appeal; rather, it must have been both raised to and ruled upon by the court below. *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998).

Although Rule 59(e), SCRCP motions are not applicable in matters before the Commission itself,[4] such motions are applicable when the circuit court sits in an appellate capacity, and they are required to preserve an issue for review by the Court of Appeals or this Court. See *Shealy*, 341 S.C. at 460, 535 S.E.2d at 444 (holding, in a workers' compensation case, that the alleged error was not preserved for appellate review where the circuit court did not rule on the issue and no Rule

---

4. *Stone v. Roadway Express*, 367 S.C. 575, 582, 627 S.E.2d 695, 699 (2006) ("Rule 59(e) is not applicable in proceedings before the commission."); *Nettles v. Spartanburg Sch. Dist. # 7*, 341 S.C. 580, 535 S.E.2d 146 (Ct.App.2000) (stating workers' compensation law does not contain a motion to reconsider; rather, a party must appeal).

59(e), SCRCP motion was made); *Leviner v. Sonoco Prods. Co.*, 339 S.C. 492, 530 S.E.2d 127 (2000) (observing neither party filed a timely motion under Rule 59(e), SCRCP seeking clarification of the circuit court's order in an appeal from the Commission); *see also Hill v. South Carolina Dep't of Health & Envt'l Control*, 389 S.C. 1, 698 S.E.2d 612 (2010) (stating Rule 59(e), SCRCP motions are necessary to preserve issues not ruled upon for review when the circuit court sits in an appellate capacity) (citing *City of Rock Hill v. Suchenski*, 374 S.C. 12, 646 S.E.2d 879 (2007)).

## IV.  CONCLUSION

Because the issue on appeal concerns jurisdiction, i.e., whether an employer-employee relationship existed, this Court may take its own view of the preponderance of the evidence.  We hold the facts in this case preponderate in favor of a finding that Pikaart was the general manager of A & A Taxi and, thus, was an employee subject to the jurisdiction of the Commission.  To the extent Appellants contend the circuit court erred in making additional findings of fact that were not related to jurisdiction, we hold this issue is not properly before this Court on appeal as it was not preserved.  Consequently, we affirm the circuit court's order in full.

**AFFIRMED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.