534 S.E.2d 700

Colie L. DAWKINS, Claimant, Petitioner,

v.

Frank D. JORDAN, Sr., d/b/a St. Matthews Fence Co. and Holmes and Narver Services, Inc., Employer, and S.C. Uninsured Employers' Fund and Insurance Co. of North America, Carrier, of whom Holmes and Narver Services, Inc., S.C. Uninsured Employers' Fund, and Insurance Co. of North America are Respondents.

No. 25170.

Supreme Court of South Carolina.

Heard June 6, 2000.

Decided July 10, 2000.

Rehearing Denied Aug. 18, 2000.

Kathryn Williams, of Kathryn Williams, PA, of Greenville, and Dallas D. Ball, of Pickens, for Petitioner.

Ellen A. Mercer, of Collins & Lacy, of Columbia, for respondent S.C. Uninsured Employers' Fund.

Andrea C. Pope, of Barnes, Alford, Stork & Johnson, of Columbia, for Respondents Holmes and Narver Services, Inc., and Insurance Co. of North America.

BURNETT, Justice:

This is a workers' compensation matter. We granted a writ of certiorari to review *Dawkins v. Jordan,* Op. No. 99–UP–271 (Ct.App. filed April 29, 1999), in which the Court of Appeals affirmed the circuit court's order reversing the decision of the full commission awarding benefits to the claimant. Agreeing with the circuit court, the Court of Appeals held Petitioner Dawkins (Dawkins) was not an employee of Respondent Frank D. Jordan, Sr., d/b/a St. Matthews Fence Company (Jordan). *Id.* We reverse.

## FACTS

At the hearing before the single commissioner, Dawkins testified he had twenty-five years experience in fence installation and owned a fence installation business. Jordan worked for Dawkins then formed his own fencing business, St. Matthews Fence Company. Dawkins testified at times he would work for Jordan and, at other times, Jordan would work for him. On these occasions, the two paid each other by the hour.

Dawkins explained Jordan did not have the experience necessary to remove and install a large fence. Accordingly, when Jordan told Dawkins he could get a "big job" at McEntire Air National Guard Base if Dawkins would help him, Dawkins agreed to help. He assisted Jordan in preparing the bid for the project. Dawkins testified they estimated the labor, including his own, at hourly wages. Dawkins denied agreeing to be partners with Jordan. Holmes and Narver

Services, Inc., the general contractor, awarded the contract to Jordan's business, St. Matthews Fence Company.

Dawkins testified he provided three employees (who usually worked for his fence business) to work for Jordan on the McEntire project; Jordan provided one employee. All the crew, including Dawkins and Jordan, performed physical labor. Dawkins stated, on average, they worked 45 hours per week. Dawkins testified both he and Jordan instructed the men what to do. Dawkins explained he supervised the job because Jordan "could not," implying Jordan did not have the experience to supervise the project. He stated "that's what [Jordan] paid me for, is to put up the fence for him." Dawkins testified he stepped in a hole and was injured during the second week on the project.

Dawkins testified he financed the project for Jordan. He provided a tractor and diggers because Jordan did not have the equipment.

Dawkins testified Jordan told him when he could come and go on the project. After his injury, but before the project was completed, Dawkins went on a hunting trip which he had scheduled eight months earlier.

At the conclusion of the project, the general contractor paid St. Matthews Fence Company $15,035.31. Jordan gave Dawkins a check for $8,470. Dawkins testified from this check he paid himself and the three employees he had provided at hourly rates; he stated he received more than half of the $15,035 to reimburse him for gasoline, oil, rental equipment, and materials he had purchased for the project. Dawkins denied he and Jordan had agreed to split the profit on the fencing project.

Jordan testified a representative of Holmes and Narver Services, Inc., told him about the fencing project at McEntire. Jordan stated he was unable to do the job by himself and asked Dawkins if he would assist. Jordan said they agreed to be partners and split the profit "down the middle, 50/50." He testified he had worked for Dawkins since establishing St. Matthews Fence Company; on only one occasion was he paid by the hour.

According to Jordan, he and Dawkins prepared the bid. Dawkins estimated the labor, materials, and workers' compensation costs. He and Dawkins were not included in the labor estimate because they intended to keep the profit.

Jordan stated Dawkins was "more versed in building fences than I was at the time" and did most of the supervising. Both Jordan and Dawkins attended a pre-construction meeting.

Jordan testified both he and Dawkins provided equipment for the project. Jordan stated he provided a truck and hand tools. Jordan testified his son was his only employee on the project; Dawkins had three employees. Jordan testified Dawkins and his employees worked on the project for four weeks.

Jordan stated Dawkins was free to come and go as he pleased on the project. Jordan denied telling Dawkins what to do on the job.

Jordan testified he and his son worked the first week of the project and received a $2,000 check for that work alone. At the conclusion of the project, Holmes and Narver Services, Inc., issued St. Matthews Fence Company a check for $15,035.31. Jordan issued Dawkins a check for $8,470 from which Dawkins paid his three employees. Jordan testified Dawkins received more than half of the $15,035.31 because he employed more people and spent more money on gasoline than Jordan. Jordan concluded $8,470 was enough to reimburse Dawkins' laborers and leave Dawkins with a profit.

## ISSUE

Did the Court of Appeals err by holding Dawkins was not Jordan's employee?

## DISCUSSION

Workers' compensation awards are authorized only if an employer-employee relationship exists at the time of the injury. *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (1984); S.C.Code Ann. § 42-1-100 (1985) ("compensation means the money allowance payable to an *employee* ... as provided for in this Title ...".). Whether or not an employer-employee relationship exists is a jurisdictional ques-

tion. *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 459 S.E.2d 302 (1995). Where the issue involves jurisdiction, the appellate court can take its own view of the preponderance of the evidence. *Id.; Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996). It is South Carolina's policy to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act. *Id.*

■■■ Whether a worker is an employee or independent contractor is a fact-specific matter resolved by applying certain established principles. "The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment." *Young v. Warr*, 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969). There are four elements which determine the right of control: 1) direct evidence of the right or exercise of control; 2) furnishing of equipment; 3) right to fire; and 4) method of payment. *Tharpe v. G.E. Moore Co.*, 254 S.C. 196, 174 S.E.2d 397 (1970). "[F]or the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation; while, in the opposite direction, contrary evidence is as to any one factor at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all." 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 61.04 (2000).[1]

■■■ The Court of Appeals concluded Dawkins failed to establish any of the four factors set forth in *Tharpe* and, therefore, failed to prove by a preponderance of the evidence he was Jordan's employee. *Dawkins, supra.* We disagree.

1. *Right to Control.* The Court of Appeals determined "Jordan did not exercise control over the McEntire project. By his own admission, Dawkins testified that he supervised

---

1. Jordan does not claim Dawkins was an independent contractor, but rather he and Dawkins were either partners or co-venturers. In analyzing whether the two men were partners/co-venturers or employer/employee, the same factors as set forth in *Tharpe, supra,* apply. *Marlow v. E.L. Jones & Son, Inc.*, 248 S.C. 568, 151 S.E.2d 747 (1966) (working partners are not employees).

the project. He denied that Jordan was the supervisor."
*Dawkins, supra.*

The Court of Appeals misinterpreted the testimony and misapplied the law on the right to control. Both Dawkins and Jordan testified Dawkins supervised the McEntire project *because Dawkins was more experienced.* For purposes of establishing an employer-employee relationship, the question is not whether the employer actually exercised control, but whether the alleged employer had the *right* to control and direct the particular work or undertaking. *Young,* 252 S.C. 179, 165 S.E.2d 797. Based on both Jordan's and Dawkins' testimony, Jordan had the right to control and direct the McEntire fence project.

2. *Furnishing of Equipment.* While Dawkins may have provided more substantial equipment, Jordan testified he also provided some equipment. This evidence is not indicative of the nature of the relationship between Dawkins and Jordan.

3. *Right to Fire* and 4. *Method of Payment.* Regarding the right to fire, the Court of Appeals concluded because Dawkins went on a hunting trip before the McEntire project was completed, Jordan did not have the right to fire Dawkins. It further found "Jordan testified he did not tell Dawkins what to do and that Dawkins could come and go as he pleased." *Dawkins, supra.*

The Court of Appeals ignored Dawkins' testimony on this issue. Dawkins stated Jordan did tell him when he could come and go. Further, Dawkins testified he had scheduled the hunting trip months before agreeing to work for Jordan on the McEntire project, thereby implying Jordan had agreed to let Dawkins leave before the fence was completed.

With regard to method of payment, the Court of Appeals concluded because "there was still money left over" after reimbursing Dawkins, Dawkins and Jordan must have agreed to share the profits and, therefore, there was not an employer-employee relationship. *Dawkins, supra.* A portion of Jordan's testimony supports this conclusion. However, Jordan also stated, in addition to the $15,035 final payment, he received a $2,000 check for a week's work before Dawkins began work on the project. He did not share the proceeds of

this check with Dawkins because Dawkins did not work on that portion of the project.

Dawkins, however, testified the two men were not partners and did not split the profit on the project. Instead, he claimed he was paid at an hourly rate.

It is undisputed Jordan's $8,470 check (less than half of the total $17,035 paid by the general contractor) reimbursed Dawkins for his expenses, paid three employees, and either paid Dawkins at an hourly rate or left him with more money as profit. However, since Dawkins did not itemize his expenses, it is impossible to determine whether, as the Court of Appeals held, "there was still money left over." [2]

It is also undisputed Jordan received $2,000 for work he performed on the project before Dawkins began work. Dawkins did not receive any of the proceeds from this check. This evidence supports Dawkins' claim he was paid as Jordan's hourly employee.

■ With regard to right to fire and method of payment, there is testimony both supporting and refuting the existence of an employer-employee relationship. While the appellate court may take its own view of the preponderance of the evidence on the existence of the employer-employee relationship, *South Carolina Workers' Compensation Comm'n v. Ray Covington*, 318 S.C. 546, 459 S.E.2d 302 (1995), the final determination of witness credibility is usually reserved to the full commission. *See Ford v. Allied Chemical Corp.*, 252 S.C. 561, 167 S.E.2d 564 (1969). Here, the full commission implicitly found Dawkins more credible than Jordan. We are inclined to accept this finding because it comports with the undisputed evidence on the right to control factor. *See discussion supra.* Moreover, it is consistent with the principle that jurisdictional doubts are resolved in favor of inclusion under the Workers' Compensation Act. *Horton v. Baruch*, 217 S.C. 48, 59 S.E.2d 545 (1950); *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996).

2. We recognize Dawkins, as the claimant, had the burden of establishing the existence of an employer-employee relationship by a preponderance of the evidence. *Marlow*, 248 S.C. 568, 151 S.E.2d 747.

442

Jordan relies heavily on *Marlow v. E.L. Jones & Son, Inc.*, 248 S.C. 568, 151 S.E.2d 747 (1966). In *Marlow*, however, the claimant unequivocally testified he and two other roofers split the proceeds of the business evenly and described their relationship as "equal partners." *Marlow* is clearly distinguishable from the case before us today.

After consideration of the factors set forth in *Tharpe*, 254 S.C. 196, 174 S.E.2d 397, we conclude Jordan had the ultimate right to control the details of Dawkins' work on the fence project and, therefore, he was Dawkins' employer. Accordingly, the decision of the Court of Appeals is **REVERSED** and the full commission's order is reinstated.

TOAL, C.J., MOORE, WALLER, and PLEICONES, JJ., concur.