638 S.E.2d 109

**Lea Ann WILKINSON (surviving spouse) For Scott R. WILKINSON (deceased employee), Respondent,**

v.

**PALMETTO STATE TRANSP. CO., Employer, and Canal Insurance Co., Carrier, Appellants.**

**No. 4179.**

Court of Appeals of South Carolina.

Submitted Oct. 1, 2006.

Decided Nov. 20, 2006.

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

368

Duke K. McCall, Jr., of Greenville, for Appellants.

Kathryn Williams, of Greenville, for Respondent.

WILLIAMS, J.:

Palmetto State Transportation Company and its carrier, Canal Insurance Company (jointly referred to as Palmetto), appeal a circuit court order affirming the Workers' Compensation Commission's (Commission) award of benefits to Scott Wilkinson's dependents. Palmetto argues the trial court erred in affirming the Commission's: (1) finding that an employer/employee relationship existed between Palmetto and Scott; (2) denial of a motion to include additional evidence; (3) finding that an occupational disability policy purchased by Scott is a collateral source; (4) denial of a motion to join Zurich American Insurance Company (Zurich), the provider of Scott's occupational disability policy, as a party defendant; and (5) denying the testimony of Gary Smith, Palmetto's expert. We affirm.

## FACTS

On May 16, 2002, while driving a transfer truck, Scott Wilkinson was involved in a fatal accident in Virginia.

Scott's spouse, Lea Ann Wilkinson, contends that during the time of the accident, Scott was an employee of Palmetto. As such, she and the couple's son are entitled to death benefits from Palmetto's workers' compensation carrier under the Workers' Compensation Act. Palmetto argues that at the time of his death, Scott was an independent contractor and not an employee; therefore, Lea Ann is not entitled to receive benefits from Palmetto. To support this argument, Palmetto contends in 1998, Scott was hired as an employee, but in May 1999 and again in 2000, the parties signed a contract in which Scott was named as an independent contractor and Palmetto as the carrier.

Palmetto further avers that even if this Court were to find an employer/employee relationship existed, Palmetto's liability should be offset by any benefits paid to Lea Ann by the occupational disability policy Scott purchased from Zurich. Lea Ann argues this policy is wholly a collateral source;

therefore, Palmetto is not entitled to receive any credit from payments made by Zurich.

On February 27, 2004, the Commissioner found an employer/employee relationship existed between Scott and Palmetto at the time of his death, and Lea Ann and the couple's child were entitled to receive death benefits under Palmetto's workers' compensation policy. In addition, the Commissioner held that Scott's occupational disability policy constituted a collateral source. Thus, Palmetto was not entitled to receive credit for benefits paid from that policy, nor could Palmetto receive benefits directly from that policy.

Prior to this ruling, Palmetto filed a motion to add Zurich as an additional party referencing the occupational disability policy purchased by Scott. In addition, Palmetto filed a motion to include additional evidence. The Commissioner denied both motions.

Consequently, Palmetto appealed to the Full Commission, asserting that the Commissioner erred in denying these motions. On September 28, 2004, the Commission's Appellate Panel affirmed and adopted the Commissioner's order. On September 25, 2005, Palmetto appealed to the circuit court, which affirmed the Commission. Palmetto now appeals to this Court.

## STANDARD OF REVIEW

The Administrative Procedures Act applies to appeals from decisions of the Commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). In an appeal from the Commission, neither this Court nor the circuit court may substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. *Corbin v. Kohler Co.,* 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002).

"Any review of the [C]ommission's factual findings is governed by the substantial evidence standard." *Lockridge v. Santens of Am., Inc.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001). Accordingly, we limit review to deciding whether the Commission's decision is unsupported by substan-

tial evidence or is controlled by some error of law. *Corbin*, 351 S.C. at 617, 571 S.E.2d at 95.

"Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached." *Lockridge*, 344 S.C. at 515, 544 S.E.2d at 844. "The 'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Lee v. Harborside Café*, 350 S.C. 74, 78, 564 S.E.2d 354, 356 (Ct.App.2002) (quoting *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)).

However, if any factual issue before the Commission involves a jurisdictional question, this Court is not bound by the Commission's findings of fact; but it can take its own view of the preponderance of the evidence on that issue. *Wilson v. Georgetown County*, 316 S.C. 92, 94, 447 S.E.2d 841, 842 (1994).

## LAW/ANALYSIS

### A. Employer/employee relationship

Palmetto initially argues the trial court and the Commission erred in concluding that an employer/employee relationship existed between Palmetto and Scott. We disagree.

Unless an employment relationship existed between the parties at the time of the alleged injury, an award cannot be granted. *Alewine v. Tobin Quarries*, 206 S.C. 103, 109, 33 S.E.2d 81, 83 (1945). Whether such a relationship exists is a jurisdictional question; therefore, this Court can take its own view of the preponderance of the evidence. *S.C. Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995). However, doubts of jurisdiction are to be resolved in favor of inclusion rather than exclusion. *Horton v. Baruch*, 217 S.C. 48, 56, 59 S.E.2d 545, 548 (1950).

Palmetto places great weight on the agreement the parties signed in May 1999 and again in 2000, in which Scott was named as an independent contractor and Palmetto as the

carrier. However, Palmetto forgets neither the descriptions of relationships as set forth in the parties' contract, nor the language in the contract declaring the parties to be that of independent contractor/carrier is binding on this Court. *Kilgore Group Inc. v. S.C. Employment Sec. Comm'n*, 313 S.C. 65, 69, 437 S.E.2d 48, 50 (1993). Rather, the determination of whether the worker is an employee or independent contractor is a fact-specific matter resolved by applying certain established principles. *Nelson v. Yellow Cab Co.*, 349 S.C. 589, 594 564 S.E.2d 110, 112–13 (2002).

The test to determine whether a claimant is an employee or an independent contractor is if "the alleged employer has the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment." *S.C. Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995) (internal quotes omitted). Four factors determine the right of control.

They are: (1) direct evidence of right to or exercise of control, (2) method of payment, (3) furnishing of equipment, and (4) right to fire. *Tharpe v. G.E. Moore Co.*, 254 S.C. 196, 200, 174 S.E.2d 397, 399 (1970). The presence of any one of the factors is sufficient proof of an employer/employee relationship; on the other hand, the absence of any one of the factors is at most mild influential evidence of contractorship. *Dawkins v. Jordan*, 341 S.C. 434, 439, 534 S.E.2d 700, 703 (2000).

In analyzing these factors, the Court recognizes that the Workers' Compensation Act favors the inclusion of employers and employees and not their exclusion. *Horton*, 217 S.C. at 56, 59 S.E.2d at 548. With this introduction in mind, we now turn our attention to these four factors.

The first factor is whether direct evidence exists of the right to, or the actual exercise of, control. If an alleged employer has the right to control and sets out the manner in which the work is to be accomplished, this is direct evidence of an employer/employee relationship. *Young v. Warr*, 252 S.C. 179, 189–90, 165 S.E.2d 797, 802 (1969). Palmetto contends it lacked control over Scott because Scott could refuse loads and

consequently worked on his own schedule. We find this argument to be without merit.

██ Palmetto exercised its control over Scott by requiring Scott to exclusively carry its loads. When Scott carried a load for Palmetto, he was instructed on when and where to pick up the load as well as how and when to deliver the load. Moreover, Palmetto required Scott to apply the company logo to his truck. This is sufficient evidence to prove that Palmetto not only had the right to control Scott but exercised this control. *See Nelson v. Yellow Cab Co.*, 349 S.C. 589, 597–98, 564 S.E.2d 110, 114 (2002) (Cab company had the right of control even when the cab driver could work as little as he wanted, drove the cab in any part of the city he chose, and could set his own schedule.).

The second factor for consideration is the method of payment; this factor indicates a lack of an employer/employee relationship. Like other employed drivers, Palmetto paid Scott by the mile. However, unlike other employed drivers, Scott's rate per mile was higher, and Palmetto made no deductions for either social security or income taxes. Moreover, unlike other employed drivers, Scott had to pay various expenses such as fuel costs, service fees, and toll fees. These facts indicate that Scott was not paid like other employed drivers.

The third factor is whether Palmetto furnished Scott's equipment; this factor indicates that Scott was an employee. Although Scott purchased his own tractor, Palmetto supplied the trailer. In addition, Palmetto prohibited Scott from using the tractor to carry loads for any other company. Moreover, Scott drove a truck bearing the Palmetto logo.

Like all of Palmetto's drivers, Palmetto required Scott to carry a global positioning system (GPS) in his truck. Palmetto's safety and maintenance director, Dennis Mersereau, testified that by employing this system, Palmetto would be able to determine Scott's location anytime. These facts show that Palmetto supplied equipment to Scott.

██ The final factor is Palmetto's right to fire, which indicates that Scott was not an independent contractor. The unconditional power to terminate the alleged employer/em-

ployee relationship, without liability, is consistent with an employer/employee relationship. *Tharpe v. G.E. Moore Co.,* 254 S.C. 196, 201, 174 S.E.2d 397, 399 (1970). There were many circumstances in which Palmetto could fire Scott.

For example, Mr. Mersereau testified Scott was required to work exclusively for Palmetto, and if he were to transport loads for another company, he would be terminated. Mr. Mersereau also testified that even though Scott could refuse loads, if he refused too many, Scott would be terminated. Palmetto could end the relationship if it did not approve of the manner in which Scott performed his work. Additionally, Scott, like any other employee, could terminate his position with Palmetto at will.

Keeping in mind the Workers' Compensation Act favors the inclusion of employers and employees and not their exclusion, and the presence of any one of the factors is sufficient proof of an employer/employee relationship, we hold an employer/employee relationship existed between Scott and Palmetto.

## B. Motion to include additional evidence

Palmetto next argues the Commission and the trial court erred by not allowing Palmetto to supplement the record with additional evidence. We disagree.

For additional evidence to be introduced, the moving party must establish that the additional evidence sought to be introduced "was not known to the moving party at the time of the first hearing, [or] by reasonable diligence the new evidence could not have been secured, and the discovery of the new evidence is being brought to attention of the Commission immediately upon its discovery." 23A S.C. Code Ann. Regs. 67–707 (Supp.2005). Additionally, the admission or exclusion of evidence is within the sound discretion of the Commission. *Holcombe v. Dan River Mills/Woodside Div.,* 286 S.C. 223, 225–26, 333 S.E.2d 338, 340 (Ct.App.1985).

By motion, Palmetto sought to introduce into the record its own additional business records and an affidavit from Mr. Mersereau.

Although the hearing in this matter occurred during August 2003, the business records were created during or before May

2002. Thus, the records were in existence prior to the hearing and could have been discovered prior to the hearing with due diligence. Likewise, Mr. Mersereau's affidavit is exclusively based on evidence that existed prior to the hearing and that could have been discovered and submitted prior to the hearing with due diligence.

Additionally, the records sought to be admitted were subpoenaed by the claimant during June 2002, and Palmetto failed to produce the records claiming that they did not exist. Based on Palmetto's failure the trial court concluded that allowing the untimely inclusion of the records would prejudice the claimant. We agree.

### C. Occupational disability policy

Palmetto next argues the Commission and the trial court erred in holding Scott's occupational disability policy was a collateral source. We disagree.

Palmetto argues it should receive credit for any payments made to Lea Ann by the occupational disability policy Scott purchased through Zurich. Lea Ann argues the Zurich policy is a wholly collateral source; therefore, Palmetto should not be able to receive credit for payments made by Zurich.

The collateral source rule states that compensation from an independent source will not reduce the payment for which another party is liable to the injured party. *Atkinson v. Orkin Exterminating Co., Inc.*, 361 S.C. 156, 172, 604 S.E.2d 385, 393 (2004). Unfortunately, an exhaustive search of South Carolina law has failed to yield an answer to whether an occupational disability policy would be considered a collateral source. However, North Carolina courts have addressed this issue. Our courts give great weight to North Carolina's decisions in workers' compensation cases because South Carolina adopted large portions of North Carolina's workers' compensation legislation. *Munn v. Nucor Steel, Div. of Nucor Corp.*, 336 S.C. 28, 31, 518 S.E.2d 289, 290 (Ct.App.1999); *See Anderson v. Baptist Med. Center*, 343 S.C. 487, 496–97, 541 S.E.2d 526, 530 (2001).

North Carolina courts have ruled that an employer is entitled to receive credit only for any payments made by the *employer* to the injured employee which were not payable

when made. *Jenkins v. Piedmont Aviation Servs.*, 147 N.C.App. 419, 557 S.E.2d 104, 108–109 (2001) (emphasis added). This credit is inapplicable to all other payments the employee may receive from outside sources. *Id.*

 It is undisputed that Scott paid all of the premiums for the Zurich policy, and Palmetto did not contribute in any way to the premiums. Therefore, Palmetto should not receive any credit for payments made by Zurich.

Additionally, it flies in the face of equity to grant Palmetto a windfall benefit by allowing it to take credit against any sums Lea Ann received from other sources. This is especially true in light of the fact that Scott paid all the premiums, and Palmetto contributed in no way to the Zurich policy.

For these reasons, we hold that Palmetto is not entitled to receive credit for any payments made by Zurich.

## D. Motion to join Zurich

Palmetto next contends the Commission and the trial court erred in not allowing it to add Zurich as a party defendant. Palmetto argues two alternative grounds for this contention. First, the Zurich policy was a workers' compensation policy, and second, Zurich would reimburse Palmetto for any benefits Palmetto paid. We disagree.

The Zurich policy states: "This Policy is not intended to provide coverage for Workers' Compensation benefits." As noted above, the Zurich policy was an outside source. As such, Palmetto is not entitled to receive any reimbursement for payments made by Zurich.

In support of its second contention, Palmetto places great weight on a clause in Zurich's policy, which would allow Palmetto to receive benefits from Zurich if Palmetto is determined liable for workers' compensation benefits [1]. However, this clause has no binding effect on this Court.

---

1. The clause states: "If a Covered person is determined by a court of law ... to be covered under workers' compensation for a Covered Loss, any benefits for which the Covered person is eligible are payable to the person who was determined to be the Covered Person's employer...."

The parties are free to contract as they wish, but this freedom is not absolute. Statutory provisions that are applicable to a contract become part of that contract. *Boyd v. State Farm Mut. Auto. Ins. Co.*, 260 S.C. 316, 319, 195 S.E.2d 706, 707 (1973). If a contract provision contravenes an applicable statute, that provision is invalid, and the statute prevails. *Id.*

Under the Workers' Compensation Act, an agreement between an employee and employer for the employee to pay any portion of premiums for benefits required by the Workers' Compensation Act is invalid. *See* S.C.Code Ann. § 42–5–200 (1976). Additionally, no contract between an employee and employer or an employee and a third party can operate to relieve the obligations created under the Workers' Compensation Act. *See* S.C.Code Ann. § 42–1–610 (1976).

As already established, Scott was an employee of Palmetto at the time of his death, and any credit received by Palmetto from the Zurich policy, for which Scott alone paid the premiums would have the effect of replacing the workers' compensation benefits Palmetto is required to pay under the Workers' Compensation Act. Permitting Palmetto to recover these payments would be contrary to South Carolina law, and any provision of the Zurich policy that would allow such payment would violate the Workers' Compensation Act and therefore would be void.

The Zurich policy has no bearing on the workers' compensation claims asserted by Scott's dependents. As such, it is unnecessary to add Zurich as a party defendant because it has no interest in the matter.

### E. Testimony of Gary Smith, Palmetto's expert

Palmetto's final argument is that the Commission and the trial court erred in not allowing the testimony of Gary Smith. We disagree.

Palmetto sought to introduce Smith's testimony to show the construction, purpose, and effect of the Zurich policy. Specifically, through Smith, Palmetto wished to show that if Palmetto is liable for workers' compensation benefits, the Zurich policy would reimburse Palmetto.

Smith's testimony was unnecessary because the Zurich policy has no effect on the workers' compensation benefits sought, and the policy provides no credit or benefits to Palmetto. Thus, the trial court did not err in excluding Smith's testimony.

## CONCLUSION

Accordingly, the circuit court's decision is

**AFFIRMED.**[2]

GOOLSBY and BEATTY, JJ., concur.

---

2. We decide this case without oral arguments pursuant to Rule 215, SCACR.