676 S.E.2d 700

Lea Ann **WILKINSON** (surviving spouse) for Scott R. **WILKINSON** (deceased), Claimant, Respondent,

v.

**PALMETTO STATE TRANSPORTATION COMPANY,**
Employer, and Canal Insurance Company,
Carrier, Petitioners.

No. 26646.

Supreme Court of South Carolina.

Heard Jan. 22, 2009.

Decided May 4, 2009.

Rehearing Denied May 28, 2009.

Duke K. McCall, Jr., of Leatherwood, Walker, Todd & Mann, of Greenville, for Petitioners.

Kathryn Williams, of Greenville, for Respondent.

Justice KITTREDGE:

This workers' compensation case involves the jurisdictional question of whether the claimant was an employee or independent contractor. We granted a writ of certiorari to review the court of appeals decision holding the claimant was an employee. *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 371 S.C. 365, 638 S.E.2d 109 (Ct.App.2006). We reverse, and hold the claimant was an independent contractor for workers' compensation purposes. In connection with our jurisprudence in evaluating whether a claimant is an employee or an independent contractor for workers' compensation purposes, we overrule the test announced in *Dawkins v. Jordan*, 341 S.C. 434, 439, 534 S.E.2d 700, 703 (2000).[1]

Scott R. Wilkinson was a long-haul truck driver for Palmetto State Transportation Company. After a period of admitted

---

1. In fairness to the court of appeals, the circuit court and workers' compensation commission, we are in essence reversing ourselves.

employment, Wilkinson opted to alter his relationship with Palmetto, and the parties entered into a formal independent contractor arrangement. The detailed contract was honored by Wilkinson and Palmetto, including the provision giving Wilkinson sole authority over "the means and methods of the performance of all transportation services." In resolving this jurisdictional question, we view the evidence as clearly preponderating in favor of an independent contractor relationship.

## I.

Palmetto is an interstate motor carrier. Wilkinson began as an employee for Palmetto, as a long-haul truck driver, in January of 1998. About a year later, Wilkinson and Palmetto agreed to alter their employment relationship to that of an independent contractor. To this end, Wilkinson purchased a tractor and the parties executed an "Equipment Lease Contract." The contract sets forth in detail the respective rights and responsibilities of the parties.

Of particular relevance in determining the nature of the parties' relationship are the following contract features. Wilkinson and Palmetto intended "to create the relationship of CARRIER and INDEPENDENT CONTRACTOR and not an EMPLOYER–EMPLOYEE relationship." The parties negotiated an increased rate per mile. Wilkinson was solely responsible for all expenses associated with acquiring, financing, maintaining and insuring the tractor. Wilkinson assumed further responsibility for "the means and methods of the performance of all transportation services," including, if necessary, hiring and supervising other drivers for the leased tractor. In this regard, the obligation for withholding and employment taxes fell to Wilkinson. Wilkinson also agreed "to carry Workers Compensation coverage in the limits statutory [sic] within the State of South Carolina." Wilkinson ultimately complied with this contract provision by purchasing an occupational accident policy from Zurich American Insurance Company, which provided for a lump sum of $50,000 and monthly payments of $2,000 for 100 months, in the event of death.[2] Termination of the contract required thirty days'

---

2. This appeal raises no issue with respect to the amount of insurance coverage and the limits available under our workers' compensation laws.

notice, and a wrongful termination entitled the non-breaching party to recover damages.

Wilkinson died on May 16, 2002, in a motor vehicle accident while driving his tractor for Palmetto. The Zurich policy was paid to Wilkinson's spouse, Lea Ann. Lea Ann also filed a workers' compensation claim, contending that her husband was Palmetto's employee. Palmetto, through its workers' compensation insurance carrier, defended on the basis Wilkinson was an independent contractor. The workers' compensation commission, circuit court and court of appeals found that Wilkinson was an employee, and therefore his spouse was entitled to workers' compensation benefits. The basis for this finding of compensability comes from the employee/independent contractor test announced in *Dawkins v. Jordan,* which we now overrule.

## II.

### A.

We are presented with the question whether Wilkinson was, at the time of his fatal accident, an employee or independent contractor. Because the question is jurisdictional, the Court may take its own view of the preponderance of the evidence. *S.C. Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995).

Under settled law, the determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the right to control the claimant in the performance of his work. *Ray Covington Realtors,* 318 S.C. at 547, 459 S.E.2d at 303; *Chavis v. Watkins,* 256 S.C. 30, 32, 180 S.E.2d 648, 649 (1971). In evaluating the right of control, the Court examines four factors which serve as a means of analyzing the work relationship as a whole: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire. *Ray Covington Realtors,* 318 S.C. at 548, 459 S.E.2d at 303; *Chavis,* 256 S.C. at 32, 180 S.E.2d at 649; *Tharpe v. G.E. Moore Co., Inc.,* 254 S.C. 196, 200, 174 S.E.2d 397, 399 (1970); *see also Dawkins v. Jordan,* 341 S.C. 434, 439, 534 S.E.2d 700, 703 (2000).

In *Dawkins,* this Court took the additional step of imposing a framework for weighing the standard factors in a manner that favored, unduly we now believe, a finding of employment:

> [F]or the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation; while, in the opposite direction, contrary evidence is as to any one factor at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all.

*Id.* at 439, 534 S.E.2d at 703 (quoting Arthur Larson & Lex K Larson, 3 LARSON'S WORKERS' COMPENSATION LAW § 61.04 (2000)). We overrule *Dawkins'* analytical framework, for it most assuredly skews the analysis to a finding of employment. We return to our jurisprudence that evaluates the four factors with equal force in both directions.[3] *See Ray Covington Realtors,* 318 S.C. at 547–48, 459 S.E.2d at 303; *Chavis,* 256 S.C. at 32, 180 S.E.2d at 649; *Tharpe,* 254 S.C. at 198–200, 174 S.E.2d at 398–99.

### B.

■ We are persuaded the four factors preponderate in favor of a finding that Wilkinson was an independent contractor. In evaluating the four factors, we are guided initially by the parties' independent contractor agreement. But more importantly, we are guided by the parties' conduct, which mirrored the terms of the contract. *See Kilgore Group, Inc. v. S.C. Employment Sec. Comm'n,* 313 S.C. 65, 68–69, 437 S.E.2d 48, 50 (1993) (noting that "in determining the nature of [the parties'] relationship," the contract "has considerable weight," but recognizing that "language in the contract merely declaring the relationship is that of an employer/independent contractor is not dispositive").

This Court remains sensitive to the general principle sanctioned by the Legislature that workers' compensation laws are to be construed liberally in favor of coverage. That principle,

---

**3.** We overrule post-*Dawkins* appellate court decisions of this state to the extent those decisions relied on *Dawkins'* claimant-friendly approach. Those cases include *Nelson v. Yellow Cab Co.,* 349 S.C. 589, 564 S.E.2d 110 (2002) and *Paschal v. Price,* 380 S.C. 419, 670 S.E.2d 374 (Ct.App. 2008). We take no position with respect to the proper result in such cases under the pre-*Dawkins'* evenhanded and balanced approach.

however, does not go so far as to justify an analytical framework that preordains the result. Moreover, that principle should not trump an unchallenged independent contractor arrangement where the parties' conduct follows the agreement in every material respect. Materiality, in this context, is measured by the factors of right or exercise of control, method of payment, furnishing of equipment and right to fire. The policy considerations favoring a finding of compensability are further diminished where, as here, the independent contractor procures workers' compensation coverage or its functional equivalent.

## 1. Direct Evidence of the Right or Exercise of Control

It is not uncommon in the long-haul trucking industry for carriers to utilize drivers who own and operate their own tractors, known as owner-operators. These arrangements must be carefully scrutinized to ensure that the actual relationship between the trucking company and the purported independent contractor truly reflects the parties' stated agreement. We are sensitive to the unequal bargaining power that may exist between the trucking company and the driver. In this regard, it naturally follows that a trucking company, with a desire to avoid a workers' compensation claim, may be tempted to have "its cake and eat it, too." The result would be an ostensible independent contractor arrangement where the trucking company exercises almost complete control over the method and manner of the transportation services.

Cognizant of these concerns, we have reviewed the actual relationship between Wilkinson and Palmetto. Palmetto utilizes approximately eighty drivers in its business, the vast majority of whom are employees. Wilkinson started as an employee, but desired to drive his own tractor and become an owner-operator. He did so, as reflected in the parties' contract.

As noted above, the contract provided that Wilkinson "shall determine the means and methods of the performance of all transportation services." We find that, true to the contract, Wilkinson exercised the right of control as to the transportation services. The fact that Palmetto contacted Wilkinson for potential assignments and provided the pickup location does

not change the result. Wilkinson retained the right to refuse any assignment. If Wilkinson agreed to an assignment and made the pickup, he exercised complete control over the delivery and chose his travel routes without direction from Palmetto. The nature of the relationship between Wilkinson and Palmetto is incompatible with that of an employee-employer. Concerning the right and exercise of control, this factor favors a finding of an independent contractor relationship.

Before moving to the next factor, we address two matters which at first glance appear to evidence Palmetto's right of control. First is the presence of a global positioning satellite (GPS) system in each tractor. The record establishes, however, that GPS monitoring was for the benefit of Palmetto customers tracking shipment of goods, not Palmetto's exercise of control over drivers. Second is the presence of governmental regulatory controls affecting the transportation of goods in interstate commerce. The parties' contract required Wilkinson to operate "the equipment in accordance with all applicable regulations." We agree with the Pennsylvania Supreme Court that requiring a worker to comply with the law is not evidence of control by the putative employer.

> [R]estrictions upon a workers' [sic] manner and means of performance that spring from government regulation (rather than company initiatives) do not necessarily support a conclusion of employment status. Indeed, employer efforts to ensure the workers' compliance with government regulations, even when those efforts restrict the manner and means of performance, do not weigh in favor of employee status. "The employer cannot evade the law ... and in requiring compliance with the law he is not controlling the driver. It is the law that controls the driver."

*Universal Am–Can, Ltd. v. Workers' Comp. Appeal Bd.,* 563 Pa. 480, 762 A.2d 328, 335 (2000) (citations omitted).

We agree that the strong regulatory presence concerning motor carriers reflects control by the government, not the motor carrier.[4]

---

4. The federal regulatory scheme is discussed in more detail below.

## 2. *Furnishing of Equipment*

Wilkinson relies on the presence of Palmetto's insignia on the outside of the tractor, together with the display of Palmetto's Department of Transportation motor carrier number, as proof of an employment relationship. Even if Wilkinson's reliance on the Palmetto insignia and motor carrier identification number were a factor in his favor, it would be far from dispositive. *Universal Am–Can*, 762 A.2d at 332 (noting that "[t]he presence of a carrier's insignia on the outside of a rig is merely one of the many factors to be considered when determining employee/independent contractor status and does not command a conclusion of employee status"). The placement of a motor carrier's insignia and identification number on the tractor is required by federal regulations. 49 C.F.R. § 376.11(c)(1) (2008); 49 C.F.R. § 390.21 (2008).

We do not give controlling weight to the presence of Palmetto's insignia and identification number on Wilkinson's tractor. Again, we view the presence of Palmetto's insignia and identification number on the tractor as governmental control, not carrier control. On balance, we find the factor of "furnishing of equipment" points to an independent contractor relationship. We make this finding primarily because Wilkinson owned his own tractor and paid for all costs associated with the tractor.[5]

## 3. *Method of Payment*

Wilkinson was paid per mile, with an increase in the rate when he transitioned from an employee to an independent contractor. The method of payment was entirely consistent with Wilkinson's independent contractor status. Palmetto furnished "1099" forms to Wilkinson, who in turn filed tax returns as a sole proprietor, specifically an "over the road trucke[r]." Wilkinson's tax returns include forms for his business expenses and self-employment taxes. The method of payment bears no indicia of an employment relationship.

---

5. Wilkinson assumed responsibility for all costs, including fuel, oil, repairs, insurance, road taxes, fuel taxes, mileage taxes, and any weight violations, with the caveat that he would be reimbursed for weight violations if he picked up a sealed trailer.

### 4. Right to Fire

This factor is the most difficult to evaluate for two reasons. One, unlike the other three factors, Wilkinson and Palmetto never had a need to confront this issue. Next is the recognition that a right of termination, in some form, exists in an independent contractor arrangement. The critical inquiry is the term "fire," for it embraces the employment relationship.

We are left with only the contract terms, and each party makes a strong argument. Wilkinson contends that the testimony of Palmetto's representative reflects a belief that Wilkinson could essentially be fired at will. Palmetto presented a host of reasons it believed it could terminate its relationship with Wilkinson. Those reasons (which never materialized) included a "consistent" refusal to haul loads and perceived poor work performance.

Palmetto counters that the "right to fire" does not exist under the parties' contract. According to Palmetto, the contract defined the terms under which the parties could terminate the relationship. Under the contract, either party could terminate the contract upon thirty days' notice. The agreement further provided that, "[i]n the event either party commits a material breach of any term of this Agreement; ... the other party shall have the right to terminate this Agreement immediately and hold the party committing the breach liable for damages."

We find Palmetto did not have a "right to fire" Wilkinson. The termination of the parties' relationship was controlled by their agreement. The termination provisions, when viewed in the context of the agreement as a whole, leads to a finding of an independent contractor arrangement.

### C.

We believe it helpful to address a related area of law, specifically the existence of federal law in the trucking industry. Although the parties raise no issue concerning the federal law, an overview of certain federal regulations serves to support our ultimate determination as well as inform the narrow reach of our decision.

Congress provides in 49 U.S.C.A. § 14102(a) (West 2007) that the "Secretary [of Transportation] may require a motor carrier ... that uses motor vehicles not owned by it ... to— (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier." The Secretary of Transportation, through the Federal Motor Carrier Safety Administration, has promulgated regulations addressing a carrier's lease of equipment from an owner-operator.

For example, 49 C.F.R. § 376.12(c)(1) (2008) states that the "lease [of equipment by the carrier] shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."[6] This regulation, and others, reflects the regulatory goal of promoting highway safety. *Indiana Refrigerator Lines, Inc. v. Dalton,* 516 F.2d 795, 796 (6th Cir.1975) (discussing the federal regulatory goal of promoting highway safety in general, specifically including preventing carriers from avoiding safety standards by the practice of leasing equipment from non-regulated carriers).

As a result of a motor carrier's general duty for the safe operation of leased equipment, our finding today of an independent contractor relationship between Wilkinson and Palmetto is necessarily limited to the workers' compensation context. Moreover, federal law is not intended to affect a

---

6. As noted, we are presented with no issue concerning the effect of federal law on the contract between Wilkinson and Palmetto. Although the contract assigns to Wilkinson the responsibility of "maintaining the equipment" and "operating the equipment in accordance with all applicable regulations," the agreement also states that Palmetto's "business of providing motor carrier transportation services to the public is subject to regulation by the Federal Government acting through the Interstate Commerce Commission and the Department of Transportation, and by various state and local governments." The contract provides in the ensuing section that Wilkinson's responsibilities are "subject in each case only to any regulatory requirements which may be placed on [Palmetto] by various governmental agencies."

state court's determination of the relationship between a carrier and a lessor of equipment under workers' compensation laws. 49 C.F.R. § 376.12(c)(4) (2008) (providing that imposing ultimate responsibility on a carrier under federal law is not "intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee"). We find the comment to subsection (c)(4) of the federal regulation instructive:

> While most courts have correctly interpreted the appropriate scope of the control regulation and have held that the type of control required by the regulation does not affect "employment" status, it has been shown here that some courts and State workers' compensation and employment agencies have relied on our current control regulation and have held the language to be prima facie evidence of an employer-employee relationship....

> We conclude that adopting the proposed amendment will reinforce our view of the neutral effect of the control regulation and place our stated view squarely before any court or agency asked to interpret the regulation's impact.... By presenting a clear statement of the neutrality of the regulation, we hope to bring a halt to erroneous assertions about the effect and intent of the control regulation, saving both the factfinders and the carriers time and expense.

Petition to Amend Lease and Interchange of Vehicle Regulations, 8 I.C.C.2d 669, 671 (1992).

The federal regulations may, therefore, not be viewed as controlling when a state court is charged with assessing whether the relationship between a motor carrier and a lessor of equipment is one of employment or independent contractor for workers' compensation purposes. In the workers' compensation setting, we properly make the determination under our common law framework.

### III.

We reverse the court of appeals and find Wilkinson was an independent contractor for purposes of workers' compensation. As such, his estate is not entitled to benefits. We overrule the approach approved in *Dawkins v. Jordan*, 341

S.C. 434, 439, 534 S.E.2d 700, 703 (2000) that the presence of "any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation." Consistent with pre-*Dawkins'* case law, the common law factors—right or exercise of control, method of payment, furnishing of equipment and right to fire—should be evaluated in an evenhanded manner in determining whether the questioned relationship is one of employment or independent contractor. We emphasize the narrow reach of our decision today, as we analyze the employment versus independent contractor question for purposes of workers' compensation only. Having found that Wilkinson was an independent contractor for workers' compensation purposes, we need not reach the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address remaining issues when resolution of one issue is dispositive).

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES JJ., and Acting Justice JAMES E. MOORE, concur.