732 S.E.2d 630

Gregory A. COLLINS (Deceased), Employee,
Claimant, Respondent,

v.

Seko CHARLOTTE and Nationwide Mutual
Insurance Co., Respondents,

v.

West Expedited & Delivery Service, Inc., Defendant,

v.

Seko Worldwide and Federal Insurance Co., Defendants,

v.

South Carolina Workers' Compensation Uninsured
Employers' Fund, Appellant.

Appellate Case No. 2011–184326.

No. 5022.

Court of Appeals of South Carolina.

Heard May 8, 2012.
Decided Aug. 15, 2012.
Rehearing Denied Oct. 18, 2012.

Timothy B. Killen, of Columbia, for Appellant.

Weston Adams, III, and Helen F. Hiser, both of McAngus Goudelock & Courie, LLC, of Columbia, for Respondents Seko Charlotte and Nationwide Mutual Insurance Co.

Linda Byars McKenzie, of Bowen McKenzie & Bowen, LLP, of Greenville, for Respondent Gregory Collins.

SHORT, J.

The dependents of Gregory Collins (deceased) filed this workers' compensation claim against West Expedited & Delivery Service, Inc. (West), Seko Worldwide, Federal Insurance Co., Seko Charlotte (Seko), Nationwide Mutual Insurance Co., and the South Carolina Workers' Compensation Uninsured Employers' Fund (the Fund). The Fund appeals the order of the Appellate Panel of the South Carolina Workers' Compensation Commission (the Commission), arguing it erred in: (1) finding Collins was not Seko's statutory employee; (2) finding

the "going and coming rule" barred Collins' recovery as to West, but not as to Seko; (3) finding Collins was a "traveling employee" as to West, but not as to Seko; (4) finding the method of payment was dispositive in determining the statutory employment relationship; (5) applying Georgia law; and (6) finding Collins would have been a gratuitous worker if considered a statutory employee of Seko at the time of his accident. We reverse.

## FACTS

Collins, a South Carolina resident, was hired by West, a South Carolina expedited delivery company, to drive a delivery van. Seko Charlotte (Seko) contracted with West for a delivery of parts from Ina Bearing Company in Spartanburg, South Carolina, to Wauwatosa and Menomonee Falls, Wisconsin. On September 7, 2007, Collins picked up the parts and delivered them to Seko's customers in Wisconsin. While driving back to South Carolina on September 8, Collins was killed in an automobile accident. This claim was filed. At the time of the accident, West's workers' compensation coverage had lapsed, and the Fund participated in the case.

Ronald Burks, Seko's general manager, testified that Seko is a transportation logistics company providing regional, national, and international transportation services. Seko employed three drivers among its sixteen employees. These drivers made deliveries within a hundred miles of Charlotte. Seko subcontracted longer trips to companies such as West.

Burks testified West provided "express hot deliver[y]" services, which are required when a customer needs immediate delivery and cannot wait for a full truck load to deliver in their area. As he explained, West provided services for cargo that "needs to get ... somewhere faster than an LTL [less than a truck load] truck would" be able to deliver.

Burks testified Seko did not have a written contract with West. Seko paid West $1.20 per loaded mile, one way. Seko utilized West's services approximately two to three times per month and contracted with four or five companies comparable to West, similarly paying them per mile, one way. Seko's contention was that once a delivery was made, its agreement with West ceased. In this case, Collins had no cargo in the van during the return trip to South Carolina, and Seko

accordingly maintained he was no longer its statutory employee.

Burks admitted that if Collins had been Seko's employee at the time of the injury, he would have a valid workers' compensation claim against Seko. He conceded that the Seko drivers were covered by Seko's workers' compensation insurance on their entire trips, rather than just on the way to the delivery site. Burks admitted he knew West's drivers would return to South Carolina because they were based here, but insisted Seko's relationship with Collins ceased after he made his deliveries in Wisconsin. Burks conceded such deliveries were an important and necessary part of Seko's business.

West's president, Morris West, testified the drivers generally do not have cargo on their return trips to South Carolina, and in Collins' case, he did not have cargo on his return trip. Morris also testified West was free to contract with another company for return loads, and Seko had no relationship with his drivers once a delivery was made.

The single commissioner found Seko was Collins' statutory employer. Seko appealed to the Commission. At the hearing before the Commission, Seko conceded it was Collins' statutory employer for the trip from South Carolina to Wisconsin. It maintained Collins was West's employee during the return trip.

Seko argued it no longer had control over Collins after his delivery in Wisconsin, and its status as a statutory employer thus ceased upon delivery. The Fund argued the issue of control was not relevant to a determination of statutory employment.

The Commission found Collins was Seko's statutory employee during his trip to Wisconsin, but Seko did not maintain the degree of control over Collins during the return trip to continue the employment relationship. Furthermore, the Commission found Collins was no longer Seko's employee within the "going and coming rule." Finding this a case of first impression in South Carolina, the Commission relied on Georgia and North Carolina law to conclude Collins was no longer Seko's statutory employee at the time of the accident. Therefore, the Commission found the Fund was liable for the claim. The Fund appealed.

## STANDARD OF REVIEW

 Coverage under the Workers' Compensation Act (the Act) depends on the existence of an employment relationship. *Posey v. Proper Mold & Eng'g, Inc.,* 378 S.C. 210, 216, 661 S.E.2d 395, 398 (Ct.App.2008). "Whether or not an employer-employee relationship exists is a jurisdictional question." *Id.* Where the issue involves jurisdiction, the appellate court can take its own view of the preponderance of the evidence. *Id.* at 216–17, 661 S.E.2d at 399. "It is the policy of South Carolina courts to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act." *Id.* at 217, 661 S.E.2d at 399; *see Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.,* 382 S.C. 295, 300, 676 S.E.2d 700, 702 (2009) (rejecting the analytical framework of distinguishing between an employee and an independent contractor that "most assuredly skews the analysis to a finding of employment" while "remain[ing] sensitive to the general principle sanctioned by the Legislature that workers' compensation laws are to be construed liberally in favor of coverage").

## LAW/ANALYSIS

 The Fund argues the Commission erred in finding Collins was no longer Seko's statutory employee at the time of his accident. We agree.

 Statutory employment is an exception to the general rule that coverage under the Act requires the existence of an employer-employee relationship. *Posey v. Proper Mold & Eng'g, Inc.,* 378 S.C. 210, 217, 661 S.E.2d 395, 399 (Ct.App. 2008). "The statutory employee doctrine converts conceded non-employees into employees for purposes of the Workers' Compensation Act. The rationale is to prevent owners and contractors from subcontracting out their work to avoid liability for injuries incurred in the course of employment." *Glass v. Dow Chem. Co.,* 325 S.C. 198, 201 n. 1, 482 S.E.2d 49, 50 n. 1 (1997). "The effect of these [statutory employment] provisions when brought into operation is to impose the absolute liability of an immediate employer upon the owner and/or general contractor although it was not in law the immediate

employer of the injured workman." *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 72, 267 S.E.2d 524, 527–28 (1980).

The statutory employment section of the Act provides:

When any person, in this section ... referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section ... referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42–1–400 (1985).

■ The Commission found Collins was not Seko's statutory employee based primarily on Seko's lack of control over Collins at the time of his accident. *See Wilkinson*, 382 S.C. at 299, 676 S.E.2d at 702 (recognizing the four-factor test to determine whether a worker is an employee or an independent contractor: (1) right to, or exercise of, control; (2) furnishing of equipment; (3) method of payment; and (4) right to fire).[1] The Commission also relied on case law from Georgia and North Carolina to find no statutory employment relationship. In *Farmer v. Ryder Truck Lines, Inc.*, 245 Ga. 734, 266 S.E.2d 922 (1980), the Georgia Supreme Court began its analysis of control stating the statutory employment statute was inappli-

---

1. In discussing the going and coming, gratuitous worker, and traveling employee doctrines, the Commission likewise focused on Seko's method of payment or control over Collins at the time of the accident. *See Whitworth v. Window World, Inc.*, 377 S.C. 637, 641, 661 S.E.2d 333, 336 (2008) ("Under the going and coming rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment. Therefore, an injury sustained by accident at such time is not compensable under the Workers' Compensation Act because it does not arise out of and in the course of his employment."); *Kirksey v. Assurance Tire Co.*, 314 S.C. 43, 45, 443 S.E.2d 803, 804 (1994) (holding gratuitous workers are not employees); *Hall v. Desert Aire, Inc.*, 376 S.C. 338, 357, 656 S.E.2d 753, 762 (Ct.App.2007) ("It is well settled that 'traveling employees are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that the traveling itself is a large part of the job.' ") (quoting Arthur Larson, *Larson's Worker[s]' Compensation Law*, § 14.01 (Lexis–Nexis 2004)).

cable in that case. *Farmer,* 266 S.E.2d at 924. In *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E.2d 536 (1966), the North Carolina Supreme Court employed the borrowed servant doctrine [2] without mentioning a statutory employment statute in Lewis' tort action. *Lewis,* 148 S.E.2d at 543.

We find the Commission erroneously utilized the "employee/independent contractor" test to determine whether Collins was Seko's statutory employee. We also find neither the Georgia nor North Carolina case relied on by the Commission is dispositive.

In *Voss v. Ramco, Inc.,* 325 S.C. 560, 566, 482 S.E.2d 582, 585 (Ct.App.1997), this court found that whether the employee was an independent contractor of the alleged statutory employer was irrelevant. The court concluded that "section 42–1–400 imposes liability on an upstream employer if the injured worker is an employee of the *subcontractor,* but not if the worker is an independent contractor of the *subcontractor.*" 325 S.C. at 566–67, 482 S.E.2d at 585. The Fourth Circuit Court of Appeals likewise stated that whether the statutory employer exercised control over the employee is not the issue in South Carolina:

> Suffice it to say that no South Carolina case has been found involving this statute in which an owner's liability either for payment of compensation or tort damages has been made to rest upon the degree of control retained by the owner over the injured employee of a subcontractor. On the contrary, once it is established that the work being done by the subcontractor is a part of the owner's general business, the employees of the subcontractor become statutory employees of the owner even though their immediate employer is an independent contractor.

*Corollo v. S.S. Kresge Co.,* 456 F.2d 306, 311 (4th Cir.1972).

█ Once the Commission determined Collins was an employee of Seko's subcontractor, West, which the parties in this

---

2. Under South Carolina's borrowed servant doctrine, "when a general employer lends an employee to a special employer, that special employer is liable for workers' compensation if: (1) there is a contract of hire between the employee and the special employer; (2) the work being done by the employee is essentially that of the special employer; and (3) the special employer has the right to control the details of the employee's work." *Cooke v. Palmetto Health Alliance,* 367 S.C. 167, 175, 624 S.E.2d 439, 443 (Ct.App.2005).

case did not dispute, the Commission should have looked to whether Collins' activities were part of Seko's trade, business, or occupation. *See* S.C.Code Ann. § 42–1–400 (1985) (providing statutory employment requires the claimant to be engaged in an activity that "is a part of [Seko's] trade, business[,] or occupation"). South Carolina has applied three tests and concludes the statutory requirement is met if the activity (1) is an important part of the owner's business or trade; (2) is a necessary, essential, and integral part of the owner's business; or (3) has previously been performed by the owner's employees. *Olmstead v. Shakespeare*, 354 S.C. 421, 424, 581 S.E.2d 483, 485 (2003). If the activity meets any of these three criteria, the injured employee qualifies as a statutory employee. *Id.* In this case, Burks admitted deliveries like the one Collins made were an important and necessary part of Seko's business. We agree that Seko's utilization of West's services two to three times per month for "express hot deliveries" is an important part of Seko's delivery business. Accordingly, we find Collins was Seko's statutory employee during the entire trip. *See Voss*, 325 S.C. at 568, 482 S.E.2d at 586 (finding a manufacturer of small equipment was the statutory employer of field salespeople because selling the equipment was an essential part of the manufacturer's business); *Marchbanks v. Duke Power Co.*, 190 S.C. 336, 351, 2 S.E.2d 825, 837–38 (1939) (affirming the trial court's finding that maintenance of Duke Power's transmission lines and utility poles was an important and essential part of its trade or business and, therefore, finding Duke Power the statutory employer of the employee of a subcontractor hired to paint utility poles).

## CONCLUSION

Based on the foregoing, we find the Commission employed improper analyses in reversing the single commissioner. Under our own view of the preponderance of the evidence, we find Collins was Seko's statutory employee. Accordingly, we reverse the Commission and reinstate the single commissioner's order.

REVERSED.

HUFF, J., concurs.

FEW, C.J., concurring.

I concur in the majority opinion. I write separately to further explain why it was error for the commission to use the independent contractor test to determine whether Collins was Seko's statutory employee. There is no reason to consider whether a claimant is a statutory employee unless the claimant or his direct employer has an independent contractor relationship with the defendant. Therefore, it is nonsensical to determine Collins was not the statutory employee of Seko because of the independent contractor relationship between Seko and West. Rather, Collins can be a statutory employee of Seko only if there is an independent contractor relationship between Seko and West.